### BODINE v LIMBEROPOULOS et

Common Pleas Court, Mahoning Co.

No. 105072. Decided March 15, 1940.

Williams & Stanley and Clyde W. Osbourne, Youngstown, for plaintiff.

James S. Cooper, Russell G. Mock and James M. Modarelli, Youngstown, for defendants.

### OPINION

By MAIDEN, J.

The amended petition states, in substance, that between April 22, 1938 and October 18, 1938, divers, sundry and many men and women did make bets and wagers in money with the defendants, did lose said bets and wagers to said defendants, that the defendants were the winners thereof as provided in §5966, GC, that without collusion or deceit said losers have not sued and effectively prosecuted suits for such losses within the time specified by statute, and that plaintiff brings this action to recover said monies so lost and for the use of the plaintiff, praying judgment in the amount prayed for. In one of the briefs filed by plaintiff the meaning of the words "divers and sundry and many men and women" is said to "necessarily refer to the thousands of persons who have made bets with the defendants."

Defendants demur to the amended petition on the following grounds:

"1. That there is a defect of parties plaintiff.

"2. That several causes of action are improperly joined.

"3. That the petition does not state facts which show a cause of action."

The statutes involved are the following:

"Sec. 5966. Money, Etc., Lost at Games May Be Recovered; Exceptions. If a person, by playing a game, or by a bet or wager, loses to another money or other thing of value. and pays or delivers it or a part thereof, such person so losing and paying or delivering, within six months after such loss and payment or delivery, may sue for and recover such money or thing of value or part thereof, from the winner thereof, with costs of suit. * * *"

"Sec. 5968. What Sufficient Allegations In Such Action. In the prosecution of such actions, the plaintiff need only allege that the defendant is indebted to the plaintiff, or received to the plaintiff's use the money so lost and paid, or converted the goods won of the plaintiff to the defendant's use, whereby the plaintiff's action accrued to him, without setting forth the special matter."

"Sec. 5969. When Third Party May Sue. If a person losing money or thing of value as provided in section fifty-nine hundred and sixty-six of this chapter, within the time therein specified, and without collusion or deceit, does not sue, and effectively prosecute, for such money or thing of value, any person may sue for and recover it, with costs of suit, against such winner thereof, for the use of such person prosecuting such suit."

These sections were originally enacted by the legislature in 1831, in 29 Ohio Laws, page 442, et seq; §5966, GC being Section 2 of that law, §5968 being Section 3 and §5969 being Section 4. §5967 GC, relating to lotteries, was not enacted until 1873. The first few words of §5968 GC, as originally adopted by the legislature read: "That in the prosecution of said action it shall be sufficient in law, etc.," but in the revised statutes of 1884 the word "action" appears printed as "actions" (plural), the enactment of 1873 (now §5967 GC) having been placed in the set-up of the page between what is now 5966 and 5968. It is a settled rule of statutory construction that in determining the meaning of a section of the Code resort may be properly had to the act from which the provision was derived. 37 O. Jur. 757, et seq. As a matter of

pure grammatical construction it follows that §5968 GC, allowing an action for money had and received, applies to §5966 GC, and does not apply to §5969 GC. In other words, an informer may not use the common count but must plead the special matter constituting his cause of action.

Tracing the statute back further we find that Section 15 of the Act of 1831 repealed a former act of the legislature dealing with the same subject matter, which was known as "An act for the prevention of gaming", passed January 4, 1824. Section 2 of that Act of 1824 reads as follows:

"Section 2. That if any person or persons whatsoever at any time, by playing at any game or games whatsoever, or by betting on the hands or sides of such as do play at any game or games, shall lose to any one or more persons so playing or betting, any sum of money or other valuable thing, and shall pay or deliver the same or any part thereof; the person or persons so losing and paying or delivering the same, shall be at liberty within six months next following, to sue for and recover the money or other valuable thing so lost and paid or delivered, or any part thereof, from the respective winner or winners thereof, with cost of suit, by action of debt founded on this act; ·to be prosecuted in any court or before any justice of the peace in this state having jurisdiction thereof; in which action it shall be sufficient for the plaintff to allege that the defendant is indebted to the plaintiff or ·received to the plaintiff's use the money so lost and paid, or converted the goods won of the plaintiff to the defendant's use, whereby the plaintiff's action accrued to him according to the form of this act, without setting forth the special matter; and in case the party so losing such money or other thing as aforesaid, shall not within the time aforesaid, bona fide without covin or collusion, sue and with effect prosecute for the money or other thing so lost and paid or delivered, it shall and may be lawful to and for any other person or persons by any such action or suit as aforesaid, to sue for and recover the same with costs of suit against any such winner or winners as aforesaid. to the use of the person or persons suing for the same."

The legislature in adopting that statute followed the New York statute insofar as the principles involved are concerned, which New York statute reads as follows:

"And be it further enacted, That every person who shall, at any time or sitting, by playing at any game. or by betting on the sides or hands of such as do play at any game, lose to any one or more persons so playing or betting, in the whole, the sum of twenty-five dollars in money or in any other thing to such amount, and shall pay or deliver the same, or any part thereof, it shall be lawful for such person within three months next thereafter, to sue for and recover the money or value of the things so lost and paid or delivered, or any part thereof, from the winner, with costs of suit, by action of debt founded on this act, in any court of record having cognizance of the same, in which action it shall be sufficient for the plaintiff to allege in his declaration, that the defendant is indebted to the plaintiff in the monies so lost and paid, or in the amount of the value of the things so lost and· delivered. for so much money had and received by such defendant to the plaintiff's use, without setting forth the special matter; and in case the person who shall lose such money, or other thing as aforesaid shall not, within the time aforesaid, bona fide, and without collusion, sue and prosecute with effect for the money or other things so by him lost and paid, or delivered, it shall be lawful for any person, by any· such action, to sue for and recover the same, and treble the amount or value thereof, with costs of suit against such winner, the one moiety of such forfeiture, when recovered, to · be paid to the overseers of the poor of the city or town in which such of-

fense shall be committed, and the other moiety to the person who will sue for the same."

It is a settled rule of statutory construction that the legislature in adopting the statutory provisions of another state does so in view of the construction which had been put upon those statutes by the courts of such other state, and with the intention it should receive the same construction in Ohio. 37 O. Jur. 753, et seq.

The New York statute was passed upon by the Supreme Court of New York in the case of Cole against Smith, decided in May 1809, and reported in 4 Johnson's Reports, page 193. That was an action by an informer to recover gambling losses under the statute above quoted, the trial resulting in a judgment for the plaintiff, but on appeal to the Supreme Court the plaintiff was nonsuited and the case dismissed; the per curiam opinion of the court, which at that time was presided over by Chief Justice Kent, not being very long is quoted in full as follows:

"PER CURIAM. The action of the plaintiff is founded entirely upon the authority of the statute. There was no contract or privity existing between him and the defendant, from which the law would raise an implied assumpsit in the defendant to pay money to him. The declaration, containing only a single count for money had and received, could not then have disclosed to the defendant the grounds of the action; and, in legal intendment, the testimony at the trial must have been a complete surprise. An action founded upon a statute, must state specially the cause of action arising under the statute. Nothing will prevent the application of this rule but the statute itself giving a particular form of declaration. In the statute respecting gaming, there is no form of declaring given, when a common informer, as the plaintiff is, brings a qui tam action for the money lost and the treble damages. He is to have an action of debt founded on the statute,

and further than that is not provided for in his case. The statute is silent as to the mode of declaring in such action; and the plaintiff must consequently follow the general rule of stating the special matter upon which his cause of action arises. The testimony did not support a count for money had and received to the plaintiff's use; and a judgment of nonsuit must be entered.

The statute of 9 Anne, c 14, s. 2, contains precisely the same provisions as our act. The latter is, in fact, a transcript of the former; and when the common informer sues in that case, upon the neglect of the loser to sue within the three months, he states the special matter, and does not declare simply upon the count for money had and received. This appears from the record in the case of Frederick v Lookup, (4 Burr. 2018), which was an action founded upon the same clause of the statute. Judgment of nonsuit."

It is contended that the case of Lannen v Worland, et, 119 Oh St 49, controls and requires the conclusion that §5968, GC, applies to §5969, GC, also. The Supreme Court holds that §§5967, 5966 and 5969, GC, while originally enacted in two separate and distinct acts are related and interdependent and will be construed with a view to harmonizing their several positions and giving effect to all. It does not appear that any question relative to §5968, GC, was before the court, and further the court was discussing merely the substantive rights of litigants under the three sections.

A further analysis of §5968, GC, as respects the language used in reference to goods won, it will be noted that the statute reads: "or converted the goods won of the plaintiff to the defendant's use, whereby the plaintiff's action accrued to him." In specifically mentioning won of the plaintiff it seems quite clear as a matter of grammatical construction that the word "informer" could not be read in with the word "plaintiff".

We come now to what is meant by "special matter," and of course that had a fixed meaning at common law as every common law pleader knows. The adoption of the Code in Ohio abolished all forms of action but did not change the requirements of pleading a cause of action insofar as the elements necessary for recovery were concerned. So that when §11305, GC, requires that the petition must contain "a statement of facts constituting a cause of action in ordinary and concise language," that is merely another way of stating the petition shall state the special matter which is the basis of the cause of action, as contra-distinguished from some permissible type of pleading where the petition may state the legal conclusion, such as "money had and received." What then are the facts constituting the cause of action of the informer? His cause of action necessarily is based on a set of facts constituting the transactions between "a person" and "another," for these are the two words used in the statutes in question. He only has a cause of action if it is based on the actions of two persons in accordance with the statute. The transactions of each person are a separate cause of action. Before there can be any cause of action there must be a specific definite person. That is what is meant by the specific matter mentioned in the New York decision and which necessarily is part of our statute by adoption.

This is merely the general principle running all through the law; for instance a suit based upon a subrogation, actions by assignees, suits by sureties and guarantors, and many other situations where the pleader may not plead by conclusion unless there is a definite statutory authority for it, but must set forth the facts, the special matter, constituting his cause of action. The reason apparently is that the defendant may assert his defenses to each individual cause of action.

It is claimed that this action is a class suit and should be controlled by the case of **Davies v Columbia Gas & Electric Corporation,** 153194, Common Pleas Court of Franklin County, in which case the court held that there was attempted to be tried a large number of separate actions under one number in the guise of a class suit. That is not this situation here, the plaintiff here suing for his own benefit, but he attempts to use the actions of a class of people as the basis of his cause of action which, in my judgment, is not authorized by the statute.

An interesting decision involving the same proposition is Arrieta v Morrissey, New York, 1866, which appears in Abbotts' Practice Reports, New Series, Vol. 1, page 439, wherein the court, speaking through Cardozo, J., reached the same conclusion in the following language:

"It is plain, then, that the defendant might have defenses to some of the causes of action which he could not plead as to the others, and as the defendant is not to be permitted to answer a bill of particulars, it seems to me that unless the complaint be drawn properly, he may be unable to avail himself of all the defenses to every part of the claim to which he may be entitled. At all events it would be throwing upon the defendant the burthen of separating in his answer the supposed causes of action, and making his defenses to each according to circumstances, unless,—which we can not know—he has to each of the claims the same defenses. I do not think that that should be done. It would be to shift from the plaintiff to the defendant the burthen of making a good pleading, which, in the first instance, rests on the former."

It follows that the demurrer is overruled on the first ground, and sustained on the ground that the petition does not state facts which show a cause of action. This disposition makes it unnecessary to pass upon the second ground.

The second amended petition is dismissed at plaintiff's costs, with exceptions noted to the plaintiff.