**GARDNER, Estate of, In re.**

Probate Court, Preble County.

No. 19551.   Decided October 19, 1959.

Stewart, Cromer & Faber, Dayton, for exceptors.
Ruey Hodapp, Jr., Dayton, for executor.

## OPINION

By ZIEGEL, J.

This case pends upon exceptions filed to the inventory and appraisement of the estate of Charles W. Gardner, deceased. The exceptor is the decedent's daughter. She contends that a note inventoried and appraised at $2,900.00 as an asset of decedent's estate in fact belongs to her and was thus erroneously listed.

It appears that early in January, 1958, exceptor and her husband were about to close a deal for the purchase of a home in Franklin, Ohio. Decedent prevailed upon them instead to purchase a home near where he resided in Preble County, Ohio. It was verbally agreed between these parties that the decedent would loan exceptor and her husband the sum of $3,500.00 upon a note secured by a mortgage: that these makers of the note would repay it at the rate of $50.00 per month, and that said note would not draw any interest; that upon decedent's death, if he should happen to die before the note was completely paid out, there would be no balance due. Thereupon an appointment was made with decedent's lawyer to formalize these arrangements. On January 20, 1958, pursuant to the appointment made these persons came to the law office of Ruey Hodapp, Sr. Mr. Hodapp, Sr., was not present, but his son, Ruey Hodapp, Jr., then a law clerk about to take the bar examinations, took the information necessary to prepare the appropriate papers. At the same time exceptor's husband paid for the legal services to be performed and received a receipt containing the following remark: "For preparing contract of sale & deed. . . ." Two days later these persons again went to the Hodapp Law Office and the note and mortgage in question were executed and delivered. Again Mr. Hodapp, Sr., was not present, his son supervising the proceedings. At this time the son, Mr. Hodapp, Jr., advised decedent, his daughter and her husband that his father believed that in order properly to handle this matter, decedent should make a will.

Thereafter, on March 27, 1958, decedent actually did make a will, which will, however, contains no reference to the conversation previously had between decedent and exceptor. In the meantime exceptor and her

husband regularly made payments to decedent of $50.00 per month in accordance with the tenor of the note, so that at decedent's death the original amount of the note had been reduced to $2,900.00. Exceptor was not aware until after decedent's death that their verbal arrangements had never been formalized.

At decedent's death, the note and mortgage were in the possession of his lawyer. Upon the face of the note executed by exceptor and her husband on January 22, 1959, were these words: "Delivered to me in escrow to deliver to W. R. Pelfrey upon order of C. W. R. Sr. or death— No money due after death of C. W. G. Sr.—R. F. H. Sr." Mr. Hodapp, Jr., testified that the foregoing was in the handwriting of his father. Mr. Hodapp, Jr., testified fully as to all of the above recounted matters, but Mr. Hodapp, Sr., was not called as a witness. There was no testimony as to when this notation was written on the face of the note in question, or what were the surrounding circumstances.

Sec. 2115.02 R. C., requires every fiduciary of a decedent's estate to "make and return on oath into court a true inventory of. . . . the chattels, moneys, rights, and credits of the decedent. . . ." "Of the decedent" means belonging to the decedent at the instant of his death. Thus, in order to sustain the exceptions herein, the Court must find ultimately that decedent did not have any title to, or property right in, the note in question at the time of his death.

Counsel for the exceptor, although not assisting the Court with any citations or memorandum, at the hearing verbally argued (1) that because of the inducements decedent used to get exceptor and her husband to purchase a home near where he resided, his executor should now be "estopped" from denying exceptor's title to the note in question; or (2) that the arrangements between decedent and his attorney, as evidenced by the notation on the note, should be considered in the nature of an "escrow" maturing upon decedent's death for the benefit of exceptor.

The use of any theory of estoppel as it applies to the facts of this case may be dismissed summarily. As between decedent and the exceptor, while there were a number of conversations regarding the exceptor moving into decedent's neighborhood, insofar as the forgiving of any balance on the note in question at decedent's death was concerned, the final agreement between these parties was that decedent would make a will. At least, upon being so advised that that was the way to accomplish their agreed ends, exceptor and her husband acquiesced by their future conduct in the arrangement. Decedent may have breached a contract to make a will but this Court need not decide that question here. If it was agreed that exceptor would receive any balance due on this note at decedent's death by will, the note would nevertheless be an asset in the hands of decedent's executor until distributed, and would obviously have to be inventoried. Some estoppel principle might be involved in an action for breach of the contract to make a will; but, as indicated, that is outside the scope of inquiry of this Court.

Apparently decedent, in the interim between January 22, 1958, and March 27, 1958, decided not to accomplish the verbal agreement between

himself and his daughter by making a will, but rather elected to set up what is designated on the face of the note in question as an "escrow," whereby he left the note with his lawyer with instructions to deliver the same to "W. R. Pelfrey," who is exceptor's husband, "upon order of C. W. R. Sr. or death—no money due after death of C. W. G. Sr." "C. W. R.," the Court concludes, represents a scrivener's error, and really should have been "C. W. G." standing for Charles W. Gardner, the decedent.

The word "escrow," this Court believes, is misused, and has no applicability. By definition, an escrow refers to the delivery of an instrument to a third person to await the payment of money or the performance of some other condition, which is certain to happen, and which is a condition precedent to the delivery of the instrument to the ultimate grantee or vendee. Where it is merely to await the lapse of time, or the happening of some contingency, and not the performance of any condition, there is no escrow, but the grantee's or vendee's property presently, with enjoyment thereof postponed. See 20 O. Jur. (2d), 207.

Regardless of the legal inaccuracy in the phraseology that may have been employed, the fact remains that decedent did leave the note and mortgage with his lawyer with some kind of instructions as to what to do with it, either upon order of the decedent or upon his death. The question the Court must here decide is the legal effect of what he did do insofar as exceptor is concerned.

Two avenues of approach present themselves. Did decedent set up some sort of inter vivos trust, with himself as the settlor, his lawyer as the trustee, and the exceptor and her husband as the cestuis que trust? Or was this an attempt to make a gift to the exceptor and her husband through the medium of a third person, with the donee's enjoyment of the gift being postponed until his death or order? The destination reached may be quite different depending upon which avenue is used. The degree of control that a settlor may maintain over the corpus of an intervivos trust exceeds greatly that degree of control which a donor may maintain over the res of an inter vivos gift. For example, under §1335.01 R. C., with certain exceptions unnecessary to mention here, revocable trusts are sustained in Ohio. **Union Trust Co. v. Hawkins, 121 Oh St 159, 167 N. E. 389; Cleveland Trust Co. v. White, 134 Oh St 1, 11 O. O. 377, 15 N. E. (2d) 627; Bolles v. Toledo Trust Co., 144 Oh St 195, 29 O. O. 376, 58 N. E. (2d) 381;** and a number of other cases. Thus, in a trust situation, generally speaking, the maintenance of dominion over the trust corpus by the settlor, even to the extent of being able to destroy the trust, unless the power to revoke is exercised during the settlor's life, does not affect the validity of such a trust upon his death. On the other hand, in order to make a completed gift the donor of the gift must relinquish all dominion over the property intended to be given. **26 O. Jur. (2d) 154, par. 13;** and **162, par. 18;** and numberous cases cited thereunder.

From the meager evidence before the Court as to what the arrangements were between decedent and his lawyer as to the note and mortgage which decedent did leave with his lawyer, this Court is unable to

find that any trust as such existed. Legal title to the res of a trust is always in the trustee. **40 O. Jur. 112.** Nothing in the instant case shows that decedent's lawyer had any title whatsoever in the note and mortgage in question. The note was not indorsed; the mortgage was not assigned. If the exceptor and her husband had failed to make payments in accordance with the tenor of the note during decedent's lifetime so that an action on the note or in foreclosure would have been necessary, nothing in the testimony or in the exhibits would have given decedent's lawyer the right to bring such an action in his own name. If it were decedent's intention to set up a true trust, legal title to the note and mortgage would have been in the lawyer, and he would have been empowered to proceed without reference to decedent. Such was not the case here.

The Court must conclude, therefore, that decedent was attempting to make a gift of the note and mortgage to the exceptor and her husband by leaving them with his lawyer with instructions to deliver them to the exceptor and her husband upon his order or death. Delivery of a gift may be made to a third person for the donee's use. **26 O. Jur. (2d) 164, par. 20.** "A completed gift is created where evidence in a particular case shows delivery of property by the donor to a third person for the benefit of the donee, under circumstances manifesting an intention to vest immediate title in the donee and relinquishment of all dominion and control over the property; and the third person is thereby constituted a trustee for the donee." "The validity of such gift is not affected by the fact that the donee's enjoyment of the property is postponed until the donor's death." **Streeper, Admr. v. Myers, 132 Oh St 322, 8 O. O. 78, 7 N. E. (2d) 554.** Acceptance by the donee of such a gift will be presumed if beneficial to him.

The Streeper case, supra,, uses the word "trustee" in defining the relationship that exists in such case between the third person who holds physical possession of the property of the gift and the donee. Strictly speaking, if the historic definition of a trustee as one who holds legal title for the benefit of another is adhered to, this is inaccurate. Certainly it is inconsistent with the above quoted statement about vesting "immediate title in the donee. . . ." What the Supreme Court is saying is that a relationship of trust is thereby established between the third person and the donee, whatever name might be given to this third person.

Quoting with approval from an Iowa case, Jones v. Nicholes, 151 Iowa, 362, 130 N. W., 125, the Supreme Court in the Streeper Case does point out that "The test seems to be whether any interest in the property itself has been retained, as distinguished from the mere use or enjoyment." This is the question this Court must answer in the instant case.

In the Streeper Case, supra, the decedent indorsed six building and loan certificates which he owned each to a different person and left them with an officer of the company to deliver to the persons designated if anything happened to him. He reserved the right to receive the interest on these certificates as long as he lived. Held: "Where there has

been a completed gift of property, the reservation by the donor to himself of the earning thereof will not invalidate the gift." It is pointed out that here all the decedent received was the interest or earnings from his gift. The principal of the gift actually, and by his expressed intention when he made the gift, remained intact.

The case of In re Fetzer, 31 Abs 203, 17 O. O. 4, 34 N. E. (2d), 306, affirmed without opinion by the Supreme Court, 136 Oh St 426, 17 O. O. 17, with one material exception, is quite similar to the case at bar. The action there was also on exceptions to the inventory, however being brought by the legatee. In that case decedent's son and daughter-in-law had made a note to him for $8,000.00. Later, decedent gave this note to his lawyer with written instructions to hand the same over to his son in the event of his death, which was done. The record there disclosed that during a period of twenty seven months which the lawyer held this note the decedent paid no more attention to it and that nothing was paid on it.

In State, ex rel. Shaffer, Exrx., v. Kuthy, 47 Abs 14, 71 N. E. (2d) 133, affirmed by the Supreme Court without opinion, 145 Oh St 516, 31 O. O. 176, the decedent made a gift of certain stock certificates. During his life he continued to vote the stock and to collect the dividends paid thereon. The Court held that under these facts he had relinquished all dominion and control over the stock and that there was a completed gift. See also Bennett v. Donley, 32 O. O. 179.

In all of the cases referred to above in which a completed gift was held to have been made even though the donor may have reserved certain rights and privileges to himself over the subject matter of the gift during his lifetime, it is noted that some definite, assured part of the subject matter of the gift remained intact for the ultimate enjoyment of the donee. Thus, these various courts have held that under the circumstances delineated there was a relinquishment of all dominion and control and thus a completed gift. In the case at bar, however, that is not the case. Here, although decedent left a note and mortgage with his lawyer for delivery upon his order or death to the exceptor and her husband, he did reserve to himself the right to receive not just income, for in this case there was no income, the note providing that it should carry no interest, but the right to receive and put to his own use the principal of the note at the rate of $50.00 per month. Assuming that he completed these arrangements on the day he made his will, which was March 27, 1958, between that date and the date of his death, the amount or value of his "gift" was reduced by $500.00, being the amount of the payments made to him on the principal of the note by exceptor and her husband. Each month the "gift" was reduced by $50.00. Had decedent lived long enough he would have given nothing. Under these facts, this Court holds that the decedent did not part with all dominion and control over the note and mortgage in question and thus there was no gift.

It might be argued that since by its very nature a gift is noncontractual there being no consideration moving from the donee to the donor, and since in the instant case there is a possibility of consideration in the fact that as a result of decedent's inducements exceptor and her

husband changed their position, the gift concept of the foregoing transaction is erroneous. While there were a number of conversations between the decedent and exceptor and their lawyer as to the mechanics of accomplishing the forgiving of any balance due on the note at decedent's death, it was finally agreed that decedent should make a will to that effect. The consideration present, if any, would apply only to the contract to make a will, and to no other transaction.

The Court finds, therefore, that title to the note and mortgage in question at the time of decedent's death was in the decedent, and that such note and mortgage were properly inventoried and appraised as an asset of decedent's estate. The exceptions to such inventory and appraisement will be overruled. Counsel for the executor will prepare an appropriate entry, not only overruling said exceptions, but also otherwise approving the inventory and appraisement.