SALAMON, APPELLANT, *v.* TAFT
BROADCASTING COMPANY, APPELLEE,
ET AL.

(No. C-830483—Decided April 18, 1984.)

*Messrs. Hermann, Cahn & Schneider, Mr. Daniel J. Klonowski, Mr. Kent B. Schneider* and *Mr. Jay H. Salamon,* for appellant.

*Messrs. Taft, Stettinius & Hollister* and *Mr. W. Stuart Dornette,* for appellee.

PALMER, P.J. Plaintiff-appellant, Jay H. Salamon, brought the instant action against the defendant corporation, the operator of an amusement park located in Warren County, Ohio, known as Kings Island Amusement Park, and against fifty unknown corporations alleged to own or operate various concessions at Kings Island. The complaint alleged that from July 1981 through December 1981, the defendants operated at Kings Island "various games, schemes, contests and devices wherein members of the public paid money for the chance to win prizes." Further alleging that such games were illegal gambling devices or schemes under R.C. 2915.02, and that the defendant knowingly permitted its property and structures to be used for such purposes, plaintiff asserted that "numerous persons" participated in such illegal amusements and that "said persons lost a total sum of money in an amount as yet unknown to plaintiff." Asserting that such persons had failed to exercise their rights under R.C. 3763.02 to recover their losses within six months, plaintiff alleged his entitlement to bring the instant action under R.C. 3763.04 for the recovery for all such losses for his own use and entitlement. Accordingly, plaintiff prayed for the equivalent of all money lost at Kings Island by persons participating in illegal games, schemes, etc. for the July-to-December 1981 period, a lien on Kings Island property, attorney fees, and other relief. Interrogatories were filed with the complaint, and later, a second set of interrogatories, seeking discovery of such illegal games, the operators of any such games or schemes, and an accounting of revenues therefrom.

Defendant answered admitting its operation of Kings Island, but denying the operation of any illegal games or schemes at its Kings Island facility, and denying plaintiff's right to recovery under R.C. 3763.04. The deposition of plaintiff was taken by defendant and, based upon plaintiff's responses to various questions propounded therein, defendant filed its motion for summary

judgment. The trial court, after hearing arguments thereon, elected to treat defendant's Civ. R. 56 motion as a Civ. R. 12 motion to dismiss, and granted the motion, entering its entry of dismissal under Civ. R. 12 for failure to state a cause of action. From this judgment, plaintiff filed the instant appeal, raising as his single assignment of error the contention that "[t]he trial court erred to the prejudice of plaintiff-appellant in dismissing his action for 'failure to state a cause of action under Ohio Civil Rule 12.' "

## I

Defendant's theory of entitlement to summary judgment against plaintiff was predicated upon plaintiff's inability, as conceded in his deposition, to name any specific individuals who had lost money on illegal games or devices at Kings Island, and, obviously, any specific sums lost by such individuals and won by any of the named or unnamed defendants. This inability, which could not be cured by any discovery available to plaintiff,[1] was, in the argument of defendant, fatal to any theory of recovery under R.C. 3763.04.[2] Relying, in principal part, on the decisions in *Bodine* v. *Limberopoulos* (C.P. 1940), 31 Ohio Law Abs. 200 [17 O.O. 149], and *Marx* v. *Scott* (1937), 56 Ohio App. 366, defendant argued that, given the lack of knowledge of the plaintiff, and the inability to cure that lack of knowledge, of any named persons losing specific amounts to named winners, no genuine issues of material fact subsisted under R.C. 3763.04, and reasonable minds could only conclude in favor of defendant.

As noted above, while the trial court agreed with defendant's premise, it chose to treat the matter as a Civ. R. 12(B)(6) motion to dismiss for failure to state a claim upon which relief can be granted, and entered its dismissal accordingly. The three specific issues raised by plaintiff under his assignment of error all address themselves to this procedural development, which we note was both unsolicited and opposed by defendant in the trial court. Pointing to Civ. R. 12(B), plaintiff argues that where, as here, a motion for summary

---

[1] Plaintiff's discovery sought, and arguably could have obtained, *aggregate* sums derived from such illegal prize games, if any, both as to unnamed separate operators and as to the named defendant. For obvious reasons, attributing a specific portion of such losses to named participants, or specified portions of correspondent winnings to the operators and defendant, would have been an impossibility. The point is not disputed, although its significance is disparaged by plaintiff. See *infra*.

[2] R.C. 3763.04 reads as follows:

"If a person losing money or thing of value, as provided in section 3763.02 of the Revised Code, within the time therein specified, and without collusion or deceit, does not sue, and effectively prosecute, for such money or thing of value, any person may sue for and recover it, with costs of suit, against such winner, for the use of such person prosecuting such suit."

R.C. 3763.02, to which the above statute refers, reads:

"If a person, by playing a game, or by a wager, loses to another, money or other thing of value, and pays or delivers it or a part thereof, to the winner thereof, such person losing and paying or delivering, within six months after such loss and payment or delivery, may sue for and recover such money or thing of value or part thereof, from the winner thereof, with costs of suit.

"Neither this section nor section 3763.04 of the Revised Code shall apply to any business transacted upon a regularly established stock exchange or board of trade through a member thereof whose relation to the transaction is that of broker only, and who actually delivers or receives the securities or other commodity bought or sold in accordance with the rules and regulations of said stock exchange or board of trade."

judgment presents matters outside the pleading not excluded by the trial court, the motion *shall* be treated as a motion for summary judgment and shall be disposed of as provided in Civ. R. 56. Moreover, argues plaintiff, an action may not be dismissed under Civ. R. 12(B)(6) as long as it affirmatively appears from the allegations of the complaint that some set of facts could be established which would entitle the plaintiff to the relief requested. Plaintiff is, of course, correct in these assertions, although the consequences of this procedural error do not dispose of the matter at issue.

The trial court concluded that plaintiff's complaint was fatally defective because no "individual was named, [or] at what game he was playing * * * [or] the amount he lost." In short, the trial court felt insufficient *facts* were pleaded, thus failing to recall that with the adoption of the Civil Rules, Ohio has progressed from "fact pleading" to "notice pleading." See, generally, 43 Ohio Jurisprudence 2d (1973) 109, Pleading, Section 72. Under Civ. R. 8(A) and (E), a claim should concisely set forth only those operative facts sufficient to give "fair notice of the nature of the action * * *." *DeVore* v. *Mut. of Omaha Ins. Co.* (1972), 32 Ohio App. 2d 36, 38 [13 O.O.2d 376].

Specifically, Civ. R. 8(A) requires only that:

"*Claims for relief.* A pleading which sets forth a claim for relief * * * shall contain (1) a short and plain statement of the claim showing that the pleader is entitled to relief, and (2) a demand for judgment for the relief to which he deems himself entitled. * * *"

The instant complaint complies with these minimal requirements, and afforded the defendant adequate notice of the claim and the grounds upon which it was based. No more was required of plaintiff. See *DeVore* v. *Mut. of Omaha Ins. Co., supra.*

Indeed, it was not until plaintiff's deposition was placed before the trial court under defendant's motion for summary judgment that it could fairly be argued by defendant that plaintiff could prove no set of facts under his complaint which would entitle him to relief. Only after reference to that deposition did it become manifest that plaintiff would be unable to match specific losers to specific winners, together with the specific sums involved in each such transaction, which was the actual gravamen of defendant's attack. It follows that the issue should therefore have been determined under Civ. R. 56 rather than Civ. R. 12.

The consequences of this error are, however, not necessarily dispositive if the error was without prejudice to plaintiff. Civ. R. 61; App. R. 12(B). Thus, if the proposition of law advanced by defendant is correct, that R.C. 3763.04 requires evidence of *a person* who engaged in an illegal game of chance or wager, together with the sum lost by such person, then it follows that summary judgment should have been entered against plaintiff, who concededly was and will continue to be unable to supply this arguable requisite to recovery. In dismissing the action, the trial court would thus have been right, if for the wrong reason, and no prejudice would have attended the error. Our inquiry, therefore, passes of necessity to the merit issue: what evidence is required under R.C. 3763.04 as a predicate to recovery; does it include the necessity of proof of specific persons losing specific sums, perhaps to specific winners? If so, then we must overrule the assignment of error and affirm. If not, we must grant the assignment of error, reverse the judgment, and remand the matter for a trial of the issues.

II

Before that issue is reached, it may be useful to sketch certain background

information as revealed in the record. The plaintiff is a 1980 graduate of Case Western Reserve Law School, currently employed by the law firm which represents him in this case. In 1982, while researching a non-related matter for a client, he first came across the provisions of R.C. 3763.02 and 3763.04. Shortly thereafter he prepared and filed, as plaintiff, lawsuits against Cedar Point Amusement Park in Sandusky, Ohio, and Geauga Lake Amusement Park near Cleveland, Ohio, seeking recovery under R.C. 3763.04 of undetermined sums of gambling losses incurred by unidentified persons. These cases are apparently presently pending at some unknown stage of development. Some three weeks later, the instant suit, similar to the foregoing, was filed against Taft Broadcasting Company, the operator of Kings Island, and its unnamed concessionaires.

Plaintiff conceded knowing very little about the operations of Kings Island, had not been there himself since sometime shortly after 1972, when the park opened, and had no personal knowledge of any illegal gambling activities conducted there. Moreover, he readily conceded that he could not name any specific individual who participated in any illegal gambling activity at Kings Island during the relevant six-month period from July through December 1981 or the specific sums lost by any such individuals. Indirect information about Kings Island operations came to him from an individual identified only as "Mike," who had won a stuffed animal for his little girl, and from a Cincinnati attorney, Rick DeBlasis. However, neither individual contributed information about specific participants in specific gambling devices, or specific losses. The following colloquy is representative:

"Q. Could you tell us who the persons are who have played games at Kings Island in the period in question?

"MR. KLONOWSKI: Objection.

"A. Certainly beyond the names of the two individuals I have given you I cannot. As a matter of fact I would have to say that I don't even know if Mr. DeBlasis played a game, so beyond the one individual whose last name I don't know I cannot."

This indefiniteness carried over to the alleged gambling or wagering schemes or devices said to be present on the defendant's premises:

"Q. Can you tell us today here any particular activity at Kings Island that you know of that you're referring to in paragraph four, the past sentence?

"A. Every game at Kings Island where there's a chance to win a prize.

"Q. Can you tell us any activity at Kings Island which meets the description of the game in which there's a chance to win a prize?

"A. In terms of specifics, no.

"Q. You don't know of any?

"A. I — it is my belief that they are there, but as far as giving you specifics, I cannot do that."

Plaintiff argues that more specific information than that possessed by him is unnecessary and that the statute does not require him to individualize the losses involved by loser, winner, and sum, but merely to establish that one or more persons played an illegal game of chance and lost, paid money to the winner, and did not sue and recover the sum within six months. The requisite specific information as to the character of the games of chance under R.C. 2915.02, and the aggregate of sums lost by participants therein to the defendant, or its concessionaires, can be discovered from the records and from information possessed by defendant, argues plaintiff.

Standing four square against the plaintiff's position is the *Bodine* decision, *supra*, where the court faced the precise question at issue here. Examining G.C. 5969, the predecessor of R.C.

3763.04, the court traced its history from its original enactment in 1831 (29 Ohio Laws 442, 443, Section 4), as it was derived from an earlier New York statute of similar import. Citing the rule of construction that the legislature in adopting the statutory provision of another state does so in view of the construction put on that statute by the courts of the other state and with the intention that it should receive the same construction in this state, the *Bodine* court then reviewed the New York authorities, finding precedent in two decisions. The first, *Cole* v. *Smith* (1809), 4 Johnson's Reports 193, a *per curiam* decision of a court presided over by the distinguished jurist and legal commentator, Chief Justice Kent, held that the cause of action to recover unspecified gambling losses by an "informer" was purely statutory, that absent privity between plaintiff and defendant the law would find no implied *assumpsit* to pay money to the plaintiff, but that the plaintiff must plead and prove "the special matter" upon which his cause of action rests. In support of its holding, the court cited an English decision under the statute of 9 Anne (1711), c. 14, s. 2 (12 English Stat. 177, 178) from which the New York statute itself derived. The *Bodine* court then held, at page 204, that "special matter," a term of art under common law pleading, required a pleading of the facts constituting the cause of action. In its dispositive holding, the court then stated the facts necessary to establish the statutory cause of action:

"* * * What then are the facts constituting the cause of action of the informer? His cause of action necessarily is based on a set of facts constituting the transactions between 'a person' and 'another' for these are the two words

used in the statutes in question. He only has a cause of action if it is based on the actions of two persons in accordance with the statute. The transactions of each person are a separate cause of action. Before there can be any cause of action there must be a specific definite person. That is what is meant by the specific matter mentioned in the New York decision and which necessarily is part of our statute by adoption." *Bodine* v. *Limberopoulos, supra,* at 204.

Because the plaintiff in *Bodine* did not plead the statutory fundament of a transaction between "a person" and "another," a demurrer was sustained. Cited in support of this determination was another New York case, *Arrieta* v. *Morrissey* (1866), 1 Abbotts' Active Reports (N.S.) 439, a decision of Cardozo, J. In our case, the matter is not, of course, one of pleading as in *Bodine* and its authorities, but one of *proof.* The difference is not material to the result reached. See Part I, *supra.*

A related Ohio decision is found in *Marx* v. *Scott, supra,* where it was held that G. C. 5969, the antecedent of R.C. 3763.04, gives an "informer," *i.e.,* a stranger to the gambling transaction, a right to recover only the money actually lost, and only from the winner. *Marx* v. *Scott, supra,* at 370. Since the petition alleged neither, it was vulnerable to demurrer as failing to state a cause of action.

These two cases, *Bodine* and *Marx,* together with a court of common pleas decision following the instant trial court in dismissing the present plaintiff's complaint against the Cedar Point facility, *Salamon* v. *Cedar Point, Inc.* (Feb. 24, 1984), Erie C.P. Nos. 44595 and 45068, unreported, are the only Ohio cases cited to us on point.[3] We see no reason why

---

[3] *Vincent* v. *Taylor* (1899), 60 Ohio St. 309, may be cited as authority for the proposition that in a third-party action to recover gaming losses, the specific types of games or schemes need not be pleaded, but the action in question was against named defendants. *Lear* v. *McMillen* (1867), 17 Ohio St. 464, was not a third-party action, but was an action

we should not follow the decision and reasoning in *Bodine,* and therefore conclude to overrule the assignment of error.

We have noted plaintiff's several attacks on *Bodine,* particularly his distinction of the New York statute from the Ohio statute because of the former's limitation of $25 as the minimum recoverable amount, constituting, argues plaintiff, an additional area of defense available to each defendant not present under the Ohio statute. However, this is not the only defense available to a defendant. Others are shared by the two statutes. Proof is still required that (1) a person, (2) losing money or thing of value to another, (3) in an illegal activity as provided in R.C. 3763.02, (4) within six months, (5) without collusion or deceit and (6) fails to sue and prosecute for its recovery. Each of these elements offers a potential area of defense to the defendant. The first two of these elements, "* * * *a person* losing money or thing of value, as provided in section 3763.02 * * *," (R.C. 3763.04) *i.e.,* to "another," were indeed the actual fundaments of the *Bodine* decision, and, for that matter, of the New York authorities, in an analysis independent of particulars of defense. As we read the decision of Chief Justice Kent cited by *Bodine,* the rule of the case would stand irrespective of the idiosyncratic defense offered by the New York statute and relied upon by plaintiff to distinguish the Ohio statute.

We note further the various rules of construction cited by both parties in support of their respective interpretations of the statute in question, without finding dispositive comfort in any of them. Rules of construction, like legal axioms, can generally be found in whatever corner the searcher seeks. However, if we conclude the predominance of the rules of construction provided us by the General Assembly in R.C. 1.47 and 1.49, we must presume that "[a] just and reasonable result is intended," R.C. 1.47(C), and must consider "[t]he common law or former statutory provisions, including laws upon the same or similar subjects," as well as "[t]he consequences of a particular construction." R.C. 1.49(D) and (E).

Bearing these rules of construction in mind, it is significant that no authority is cited to us from anywhere in this jurisdiction or elsewhere which would permit a third person, wholly a stranger to the transaction, to recover for his own use, unknown (but presumably substantial) amounts of money lost by unnamed and unknowable persons in unspecified games of chance. There is, however, as we have noted, substantial authority to the contrary.

Similarly, it is not possible to ignore the ancient and arguably anachronistic nature of *qui tam* actions of the instant sort, born in a vanished era where the absence of an organized police authority to enforce criminal statutes made necessary the use of such rewards for informers. 2 Holdsworth, A History of English Law (3 Ed. 1923) 453; *Id.* Vol. 4. (1924), at 355. We are told, for instance, that England, where the device originated, abolished the last of its *qui tam* actions in 1951. Common Informers Act of 1951, 14 and 15 Geo. 6, c. 39 (1951 Law Reports, Statutes, 151 *et seq.*). See, generally, 2 Radzinowicz, A History of English Criminal Law (1974 Ed.) 138 *et seq.,* and, specifically pages 140 and 155. While it is not within the authority of the judiciary to abolish legislative enactments, however obsolete they may

---

brought by the loser against named defendants, where privity between winner and loser permitted recovery of aggregate sums lost at different times, as in *assumpsit,* without the necessity of proving special matter, such as dates or amounts of each loss. See discussion of *Bodine, supra.*

arguably appear to be, we certainly are authorized to decline any construction which would extend and enlarge the thrust and scope of the legislation in question.

We therefore conclude, as did the *Bodine* court, that the plaintiff's inability to prove the requisite elements of the statute, specifically, "a person" losing money or thing of value "to another," was irrevocably fatal to his cause of action and required the granting of summary judgment. Since no prejudice attended the court's dismissal of the complaint, we overrule the assignment of error, and affirm the judgment of the court below.

*Judgment affirmed.*

BLACK and DOAN, JJ., concur.