OPINION
{¶ 1} Plaintiffs-appellants Doris Nickler et al. appeal from the April 4, 2002, and April 11, 2002, Judgment Entries of the Stark County Court of Common Pleas.
 STATEMENT OF THE FACTS AND CASE {¶ 2} Appellee Carrollton StatCare (known also as StatCare of Carroll County) is an urgent care facility owned, operated and staffed by appellee Mercy Medical Center. At all relevant times, appellee Ann Shelby, D.O. (hereinafter "Dr. Shelby) was a locum tenes[1] physician who worked at the Carrollton StatCare.
 {¶ 3} On September 24, 1998, appellant Doris Nickler (hereinafter "appellant") went to appellee Carrollton StatCare complaining of a lump and pain in her left thigh. After examining appellant, Dr. Shelby was of the opinion that appellant may be suffering from a venous clot. For such reason, Dr. Shelby sent appellant to Mercy Medical Center for testing that could not be performed at the Carrollton StatCare. Dr. Shelby instructed appellant to follow up with a physician as recommended by the emergency room physician at Mercy Medical Center. Dr. Shelby then contacted the emergency room to let the hospital know that appellant and her husband were on the way.
 {¶ 4} Appellant and her husband then went to the emergency room. In March of 1999, after receiving treatment from four other physicians, appellant was diagnosed with soft tissue sarcoma of her left thigh. Appellant subsequently had a hip disarticulation.
 {¶ 5} On August 2, 2000, appellant and her husband [hereinafter "appellants"] filed a medical malpractice complaint against Mercy Medical Center, Columbia Mercy Medical Center, Carrollton StatCare, StatCare of Carroll County [hereinafter "appellees"], and Dr. Shelby, among others. Appellants, in their complaint, alleged, in part, that "[t]he treatment and/or care rendered by Defendants fell below the acceptable standard of care practiced by other physicians and/or hospitals operating under like and similar circumstances." Appellants further alleged that the alleged negligent conduct directly and proximately resulted in personal injuries to them.
 {¶ 6} On February 15, 2002, Dr. Shelby filed a Motion for Summary Judgment. Appellees on February 15, 2002, filed a "Joinder in Dr. Shelby's Motion for Summary Judgment" and a separate Motion for Partial Summary Judgment. As memorialized in two notices filed on February 21, 2002, appellants were granted leave until March 15, 2002, to file any briefs in opposition to the pending motions and reply briefs were due by March 22, 2002. The trial court, in both notices, set a non-oral hearing on or after March 25, 2002, on the pending motions.
 {¶ 7} On March 15, 2002, appellants filed their brief in opposition to Dr. Shelby's Motion for Summary Judgment, asking the trial court to deny Dr. Shelby's motion and to deny appellees' "Motion for Summary Judgment regarding their vicarious liability for Dr. Shelby's negligence." Appellants, on the same date, filed a combination cross Motion for Partial Summary Judgment and brief in opposition to the Motion for Partial Summary Judgment filed by appellees. Appellants supported their brief in opposition to Dr. Shelby's Motion for Summary Judgment with the affidavit of Dr. Michael Joyce, an orthopedic surgeon. Dr. Joyce, in his affidavit, opined, in part, as follows:
 {¶ 8} "It is my opinion, based upon a reasonable degree of medical certainty that Dr. Shelby's treatment of Ms. Nickler fell below the standard of care when she:
 {¶ 9} "a. Failed to send Ms. Nickler to a specialist;
 {¶ 10} "b. Failed to send Ms. Nickler for a CT scan or a MRI of her left thigh;
 {¶ 11} "c. Failed to personally contact Ms. Nickler's family physician; and
 {¶ 12} "d. Failed to follow up with Ms. Nickler regarding her condition."
 {¶ 13} Appellants also supported their brief with portions of the depositions of Dr. Joyce and of Dr. John Hines, who practices primarily in hematology and oncology. After appellees filed a reply brief on March 20, 2002, Dr. Shelby filed her reply brief on March 21, 2002.
 {¶ 14} On March 27, 2002, appellees filed a Motion to Strike appellants' cross Motion for Partial Summary Judgment as well as a supplement to the same that had been filed by appellants on March 26, 2002 since they were untimely filed.
 {¶ 15} Thereafter, as memorialized in a Judgment Entry filed on April 4, 2002, the trial court granted Dr. Shelby's Motion for Summary Judgment. The trial court, in its entry, stated, in relevant part, as follows:
 {¶ 16} "Dr. Shelby is an urgent care/emergency care physician. The only expert Plaintiff offered who is qualified to testify as an urgent care/emergency care physician is Dr. Erwin. Despite their criticisms of Dr. Shelby, Dr. Joyce and Dr. Hines are not qualified as a matter of law to offer standard of care opinions with regard to an urgent care physician. Therefore, according to the Ohio law governing expert witnesses and the burden placed upon Plaintiffs set forth above, this Court finds as a matter of law that Plaintiffs have not met their burden of offering qualified expert testimony that Dr. Shelby breached the applicable standard of care. The only qualified expert retained by the Plaintiff to testify regarding the applicable standard of care in urgent/emergency care is Dr. Erwin, and he has opined that Dr. Shelby met the standard of care." In a separate Judgment Entry filed on April 11, 2002, the trial court granted appellees' Motion to Strike appellants' cross Motion for Summary Judgment and the supplement thereto and also sustained, in part, the Motion for Partial Summary Judgment filed by appellees. The trial court, in its April 11, 2002, entry, specifically held that such appellees were entitled to summary judgment on the issue of their direct liability to appellants, with regard to "the failure to formulate, adopt or enforce hospital rules and policies on forwarding of medical records", and "with regard to any alleged direct liability for negligent hiring, credentialing or retention of physicians or its failure to oversee a physician's care."
 {¶ 17} It is from the trial court's April 4, 2002, and April 11, 2002, Judgment Entries that appellants now appeal, raising the following assignments of error:
 {¶ 18} "I. The trial court erred in granting appellee Ann Shelby, D.O.'s and appellees' Mercy Medical Center, Carrolton StatCare, and StatCare of Carroll County motion for summary judgment.
 {¶ 19} "1. The trial court err [sic] in determining that Dr. Joyce, an orthopedic oncologist and Dr. Hines, a physician board certified in internal medicine, practicing in the area of hematology oncology, were not qualified to give standard of care opinions regarding the treatment provided to appellant by appellee Shelby.
 {¶ 20} "2. Whether the trial court erred in applying the theory of equipose in a summary judgment context.
 {¶ 21} "II. The trial court erred in granting appellee's Mercy Medical Center, Carrolton StatCare, and StatCare of Carroll County motion for summary judgment."
 {¶ 22} Summary judgment proceedings present the appellate court with the unique opportunity of reviewing the evidence in the same manner as the trial court. Smiddy v. The Wedding Party, Inc. (1987),30 Ohio St.3d 35, 36. As such, we must refer to Civ.R. 56 which provides, in pertinent part: "Summary judgment shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence in the pending case and written stipulations of fact, if any, timely filed in the action, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. * * * A summary judgment shall not be rendered unless it appears from such evidence or stipulation and only from the evidence or stipulation, that reasonable minds can come to but one conclusion and that conclusion is adverse to the party against whom the motion for summary judgment is made, that party being entitled to have the evidence or stipulation construed most strongly in the party's favor."
 {¶ 23} Pursuant to the above rule, a trial court may not enter summary judgment if it appears a material fact is genuinely disputed. The party moving for summary judgment bears the initial burden of informing the trial court of the basis for its motion and identifying those portions of the record that demonstrate the absence of a genuine issue of material fact. The moving party may not make a conclusory assertion that the non-moving party has no evidence to prove its case. The moving party must specifically point to some evidence which demonstrates the non-moving party cannot support its claim. If the moving party satisfies this requirement, the burden shifts to the non-moving party to set forth specific facts demonstrating there is a genuine issue of material fact for trial. Vahila v. Hall, 77 Ohio St.3d 421, 429, 1997-Ohio-259,674 N.E.2d 1164, citing Dresher v. Burt, 75 Ohio St.3d 280,1996-Ohio-107, 662 N.E.2d 264.
 {¶ 24} While we review the record de novo and apply the same standard used by the trial court in reviewing the grant of summary judgment, appellate review is limited to the same evidentiary materials that were properly before the trial court at the time it ruled on the summary judgment motion. Christe v. GMS Mgt. Co. (1997),124 Ohio App.3d 84, 88, 705 N.E.2d 691, 693, quoting Am. Energy Servs.,Inc. v. Lekan (1992), 75 Ohio App.3d 205, 598 N.E.2d 1315. Thus, the only evidence that shall be considered by this Court in analyzing appellants' two assignments of error is the evidence that was submitted to the trial court on or before March 24, 2002, the day before the non-oral hearing on the pending motions.
 I {¶ 25} Appellants, in their first assignment of error, argue that the trial court erred in granting appellee Dr. Shelby's and appellees' Motion for Summary Judgment.[2] Appellants specifically contend, in part, that the trial court erred in holding that Dr. Hines and Dr. Joyce were not qualified to give opinions regarding the treatment that Dr. Shelby, an urgent or stat care physician, gave to appellant.
 {¶ 26} As is stated above, appellants supported their brief in opposition to Dr. Shelby's Motion for Summary Judgment with Dr. Joyce's affidavit as well as with portions of the deposition transcripts of Dr. Joyce and Dr. Hines. While Dr. Joyce is an orthopedic surgeon, Dr. Hines, who is board certified in internal medicine, practices primarily in the areas of hematology and oncology. Neither has practiced as a stat care or urgent care physician. The issue for consideration is whether the trial court erred in holding that, for such reasons, neither Dr. Joyce nor Dr. Hines was "qualified as a matter of law to offer standard of care opinions with regard to an urgent care physician."
 {¶ 27} "In order to establish medical malpractice, it must be shown by a preponderance of evidence that the injury complained of was caused by the doing of some particular thing or things that a physician or surgeon of ordinary skill, care and diligence would not have done under like or similar conditions or circumstances, or by the failure or omission to do some particular thing or things that such a physician or surgeon would have done under like or similar conditions and circumstances, and that the injury complained of was the direct and proximate result of such doing or failing to do some one or more of such particular things." Bruni v. Tatsumi (1976), 46 Ohio St.2d 127,346 N.E.2d 673, paragraph one of the syllabus. "Proof of the recognized standards must necessarily be provided through expert testimony." Id at 131-132.
 {¶ 28} An expert witness must have sufficient knowledge, skill, experience, training, and education in the area of his or her testimony so as to meet the requirements of Evid.R. 702. Such rule states as follows:
 {¶ 29} "A witness may testify as an expert if all of the following apply:
 {¶ 30} "(A) The witness' testimony either relates to matters beyond the knowledge or experience possessed by lay persons or dispels a misconception common among lay persons;
 {¶ 31} "(B) The witness is qualified as an expert by specialized knowledge, skill, experience, training, or education regarding the subject matter of the testimony;
 {¶ 32} "(C) The witness' testimony is based on reliable scientific, technical, or other specialized information. To the extent that the testimony reports the result of a procedure, test, or experiment, the testimony is reliable only if all of the following apply:
 {¶ 33} "(1) The theory upon which the procedure, test, or experiment is based is objectively verifiable or is validly derived from widely accepted knowledge, facts, or principles;
 {¶ 34} "(2) The design of the procedure, test, or experiment reliably implements the theory;
 {¶ 35} "(3) The particular procedure, test, or experiment was conducted in a way that will yield an accurate result."
 {¶ 36} Evidentiary Rule 601 further requires that an expert witness in a medical malpractice case devote "at least one-half of his or her professional time to the active clinical practice in his or her field of license, or to its instruction in an accredited school. . . ." Expert testimony must explain what a medical professional of ordinary skill, care, and diligence in the same medical specialty would do in similar circumstances. Bruni, supra. at 131.[3] However, where "fields of medicine overlap and more than one type of specialist may perform the treatment, a witness may qualify as an expert even though he does not practice the same specialty as the defendant." Alexander v. Mt. CarmelMedical Ctr. (1978), 56 Ohio St.2d 155, 158, 383 N.E.2d 564, 566.
 {¶ 37} We find that the trial court did not err in holding that Dr. Hines and Dr. Joyce were not qualified to "offer standard of care opinions with regard to an urgent care physician." As is stated above, neither Dr. Hines nor Dr. Joyce has practiced as an urgent or stat care physician. As noted by appellees, "neither doctor has specialized knowledge, skill, experience, training or education in urgent care or an urgent care setting, . . .". While appellants argue that Dr. Hines and Dr. Joyce are qualified to opine as to whether or not Dr. Shelby deviated from the standard of care since "the `treatment' rendered by Dr. Shelby was simply a physical examination, recording of observations and referral," we do not concur. We agree with appellees that a stat care or urgent care physician is not the same as a primary care physician. Dr. Robert Erwin, appellants' own expert who is the medical director of an urgent care facility and who opined that Dr. Shelby met the standard of care, explained such difference as follows:
 {¶ 38} "Q. But when you see patients who were in the — you do recognize that there is a difference between a primary care physician practice and an urgent care practice?
 {¶ 39} "A. Yes, I do.
 {¶ 40} "Q. And how would you characterize the difference between the two?
 {¶ 41} "A. Particularly on ongoing care. On my primary care patients I'm fully responsible and I will be seeing that patient on a continual basis whereas the urgent care patients, as you mentioned, use episodic care, it's episodic care and we made sure those patients get follow-up somewhere else.
 {¶ 42} "Q. Is it common for you as an urgent care doctor to instruct the patient if things don't change or get worse to follow up either with an emergency room, come back or to see their primary care physician?
 {¶ 43} "A. I would say it's most common to say to follow up with your primary care physician depending on the situation. In an acute situation you might say follow up in an emergency care environmental." Deposition of Dr. Erwin at 16-17. Thus, appellants' own expert testified during his deposition that there is a distinction between a primary care physician and an urgent care physician and the duties of the same to the patient. In short, we concur with appellees that the "context in which these "principles of basic medicine" [such as history, diagnosis and examination] are applied is different in an urgent care setting than the context with a primary care physician who sees the patient on a regular basis." While a primary care physician has an on-going relationship with his or her patient, an urgent care or stat care physician has no such relationship and does not anticipate seeing the patient more than once. Even if a patient returns to an urgent or stat care facility for treatment of the same problem, the patient may never see the same physician again. Based on the foregoing, we find that the standard of care between the practices of urgent or stat care medicine and primary care medicine differs.[4]
 {¶ 44} We further find that the field of urgent care does not overlap with the fields of medical oncology and/or orthopedic oncology so as to permit Dr. Joyce and Dr. Hines to qualify as experts. While appellants contend that the practices of Dr. Joyce and Dr. Hines overlap with Dr. Shelby's practice because the treatment and/or procedures performed by Dr. Shelby [namely, performing a physical examination, recording observations and making referrals] "are endemic to all medical practitioners," we do not agree. Applying appellants' argument, any doctor would be qualified to give a standard of care opinion in this matter since all doctors, at one time or another, perform physical examinations, record observations and make referrals. In addition, as is stated above, it is the context in which Dr. Shelby was involved in the "basic practice of medicine" that is significant. The context of providing such care in an urgent or stat care setting, which is a unique type of setting, is not the same as providing such care in an orthopedic or oncology practice setting. As is stated above, an urgent or stat care physician, who is treating a patient for an urgent problem, does not have an ongoing relationship with the patient and is not expected to see the patient again. Furthermore, there is nothing in the record establishing that Dr. Hines or Dr. Joyce have any specialized knowledge, skill, experience, training or education in the area of urgent care medicine. See McKinney v. Schlatter (1997), 118 Ohio App.3d 328. In McKinney, the court held that the mere fact that a cardiovascular thoracic surgeon had worked with cardiologists and emergency room physicians in the past did not by itself qualify the surgeon to render an expert opinion as to the standards of care applicable to physicians in such fields.[5]
 {¶ 45} Based on the foregoing, we find that the trial court did not err in holding that Dr. Hines and Dr. Joyce were not qualified to give standard of care opinions regarding the treatment that Dr. Shelby, an urgent or stat care physician, gave to appellant. Since appellants failed to satisfy their burden of establishing that Dr. Shelby failed to meet the standard of care of an urgent care physician in her treatment of appellant, we find that the trial court did not err in granting appellee Dr. Shelby's and appellees' Motion for Summary Judgment.
 {¶ 46} Appellants' first assignment of error is, therefore, overruled.
 II {¶ 47} Appellants, in their second assignment of error, contend that the trial court erred in granting the Motion for Summary Judgment filed by appellees.
 {¶ 48} Under Ohio law, a complaint alleging a claim for relief must contain a short and plain statement of the claim showing that the party is entitled to relief. Civ.R. 8(A). While we recognize the concept of "notice pleading" within Civ.R. 8(A), this rule still requires that a claim "* * * should concisely set forth only those operative facts sufficient to give `fair notice of the nature of the action * * *'" [Citations omitted.] Salamon v. Taft Broadcasting Co. (1984),16 Ohio App.3d 336, 338, 475 N.E.2d 1292.
 {¶ 49} We find, with respect to appellees Mercy Medical Center, Columbia Mercy Medical Center, Carrollton StatCare, and StatCare of Carroll County, that the complaint, in the case sub judice, fails to meet the requirements of "notice pleading" under Civ.R. 8. Appellants, in their complaint, alleged as follows with respect to the above appellees:
 {¶ 50} "4. Defendant Columbia Mercy Medical Center (hereinafter Columbia) is a corporation licensed to do business in the State of Ohio and/or held itself out as a certified institution competent by way of personnel and facilities to render quality medical care to the public and a corporation which employs and/or contracts with Defendants Caldwell and Zarate. . . .
 {¶ 51} "12. At all times relevant Plaintiff Doris Nickler was under the care and treatment of Defendants.
 {¶ 52} "13. The treatment/or care rendered by Defendants fell below the acceptable standard of care practiced by other physicians and/or hospitals, operating under like and similar circumstances.
 {¶ 53} "14. As a direct and proximate result of Defendants' negligent conduct, Plaintiff Doris Nickler, suffered and continues to suffer personal injuries which are permanent and severe in nature; incurred medical expenses; and expects to incur medical expenses in the future; experienced and continues to experience pain and suffering of both body and mind and expects to experience such pain and suffering in the near future; suffered impairment of her earning capacity; and was deprived of transacting and enjoying her normal daily activities of life."
 {¶ 54} We find that the complaint did not provide appellees with even "fair notice" of the claims against them. Furthermore, in appellants' answers to interrogatories[6], appellants responded as follows when asked to state specifically and in detail in what manner appellees, among others, were negligent in their care and treatment of appellant: "Objection. Response calls for a legal conclusion and medical opinion. Without waiving the objection, Plaintiffs believe Defendants failed to timely diagnose her cancer."
 {¶ 55} In short, we concur with appellees that appellants' complaint "contained no claim or cause of action sounding in negligent hiring, selection, credentialing, or retention of physicians." The trial court, therefore, did not err in granting the Motion for Summary Judgment filed by appellees Mercy Medical Center, Columbia Mercy Medical Center, Carrollton StatCare, and StatCare of Carroll County.
 {¶ 56} Appellants' second assignment of error is, therefore, overruled.
 {¶ 57} Accordingly, the judgment of the Stark County Court of Common Pleas is affirmed.
By Edwards, J., Hoffman, J. concurs and dissents.
Farmer, J. concurs.
In Re: Medical Malpractice.
[1] Locum Tenes is defined as "one filling an office for a time or temporarily taking the place of another." See Webster's Third New International Dictionary (1993).
[2] As is stated above, appellees Mercy Medical, et al., joined in Dr. Shelby's Motion for Summary Judgment.
[3] As noted by the court in Dean v. Akron General Medical Center
(Dec. 22, 1999), Summit App. No. 18636: "[w]hile Bruni ruled specifically on the standard of care required of a defendant who was a board-certified surgical specialist, it has also been applied in cases in which it is not clear that the specialty is one for which board certification is possible." Id. at Fn 16.
[4] We note that while appellants retained Dr. Erwin as their expert in urgent/stat care, Dr. Erwin, during his deposition, opined that Dr. Shelby met the standard of care of a stat care or urgent care physician.
[5] In Alexander v. Mt. Carmel Medical Ctr. (1978), 56 Ohio St.2d 155,383 N.E.2d 564, one of the cases relied on by appellants, the court held that a podiatrist was qualified to testify concerning the alleged malpractice by an orthopedic surgeon in applying and removing a cast. The court, in Alexander, noted that the podiatrist, who had applied casts as part of his practice and who had been instructed in podiatry school as to the method of application, was qualified since "the application and removal of a cast are not procedures limited to orthopedic surgeons." Id. at 158. The Court, in Alexander, noted that the podiatrist, by his education and clinical experience, had the requisite familiarity and knowledge concerning cast application and removal. We agree with appellees that, in contrast, the "standard of care of an urgent care physician is not within the knowledge of an orthopedic surgeon or medical oncologist." As is stated above, both Dr. Hines and Dr. Joyce testified that, they, had no experience in urgent care.
[6] A copy of appellants' responses to interrogatories was attached to appellees' Motion for Partial Summary Judgment.