MEDICAL ASSURANCE COMPANY, INC., Appellant,

v.

DILLAPLAIN et al.,

[Cite as *Med. Assur. Co., Inc. v. Dillaplain*, 186 Ohio App.3d 635, 2010-Ohio-841.]

Court of Appeals of Ohio,
Second District, Greene County.

No. 2009 CA 6.

Decided March 5, 2010.

636

Matthew P. Moriarty and Ed E. Duncan, for appellant.

Shawn M. Blatt and Susan Blasik–Miller, for Greene Memorial Hospital.

Nicholas E. Subashi and Andrew E. Rudloff, for appellees, Robert P. Dillaplain, M.D., and Robert P. Dillaplain, M.D., Inc.

Bruce J. Babij; John D. Holschuh Jr.; and Deborah R. Lydon and Peter J. Georgiton, for Jeffrey Coleman Jr., Cheryl Neer, and Jeffrey Coleman Sr.

FROELICH, Judge.

{¶ 1} Appellee Robert P. Dillaplain, M.D., was sued in 2005 for malpractice by Jeffrey T. Coleman Jr. and others, in the Greene County Common Pleas Court. Greene C.P. No. 2005 CV 381. The alleged malpractice arose, generally, from obstetrical care occurring in 1993 and 1994. Appellant, the Medical Assurance Company, Inc., proceeded to defend Dillaplain under a reservation of rights but in August 2007 filed a declaratory-judgment action seeking a declaration because of a "previous reported" exclusion in the policy that the insurance company was not required to defend and indemnify him. The issue was submitted on cross-motions for summary judgment, and the trial court adopted the magistrate's decision finding that Medical Assurance has a duty to defend and indemnify Dillaplain on the malpractice claim. Medical Assurance also filed a motion to amend its declaratory-judgment complaint, which the court denied. We will affirm.

{¶ 2} Medical Assurance issued a liability policy covering Dillaplain with a policy period from January 1, 2002, to January 1, 2003, and with a retroactive date of January 27, 1983. The policy states: "We agree to pay on behalf of each insured all sums which such insured shall become legally obligated to pay as damages because of any medical incident which occurs after the retroactive date applicable to such insured and which is first reported during the policy period."

{¶ 3} If the analysis were to stop at this point, the doctor was covered since the alleged malpractice occurred after the retroactive date. However, the policy also contains an exclusion (at paragraph III, K), which states: "We will not pay damages because of any of the following, and we will not provide a defense for any suit alleging * * * any medical incident which has been reported to another insurance carrier prior to the first date coverage is provided under this policy; any medical incident which occurred prior to the first date coverage is provided under this policy, if on such date, the insured knew or believed, or had reason to

know or believe, that such medical incident had occurred; or any other medical incident that occurred during a period in which the insured was not covered under a policy of professional liability insurance."

{¶ 4} In the definition section, "medical incident" is defined as "[a] single act or omission or a series of related acts or omissions arising out of the rendering of or failure to render professional services to any one person by any insured or any person for whose acts or omissions an insured is legally responsible which results or is likely to result in damages.* * * [F]or purposes of this definition, treatment of mother and fetus (or fetuses) from conception through postpartum care constitutes a single medical incident, and a continuing course of professional services relating to substantially the same medical condition constitutes a single medical incident."

{¶ 5} Additionally, there is a reporting endorsement, with an effective date of January 1, 2003, a termination date of January 1, 2003, and a retroactive date of January 27, 1983, that states: "This endorsement amends the Professional Liability Coverage Part of the policy. In consideration of an additional premium of $0.00 the insured physician(s) named below shall be covered, under the terms and conditions of the policy, for any medical incident which occurred on or after the retroactive date applicable to each insured physician, as stated below, and prior to the above-stated Termination Date, but which is first reported after such Termination Date."

{¶ 6} In 1995, Dillaplain was given notice, by way of a 180–day letter, that the individuals who later became the plaintiffs in Greene County Common Pleas No. 2005 CV 381 were considering bringing an action against him for his professional care and treatment. Dillaplain was insured with the P.I.E. Mutual Insurance Company at that time, and he reported this letter to P.I.E. no later than March 17, 1995.

{¶ 7} Medical Assurance argues that coverage is excluded since the medical incident had been reported to another insurance company in 1995, which was "prior to the first date coverage is provided" of January 1, 2002. Medical Assurance further argues that the reporting endorsement does not extend coverage since it only extends coverage "under the terms and conditions of the policy" and that, under the terms of the policy, coverage is excluded. Dillaplain argues that the "first date coverage is provided" is January 27, 1983, and that, therefore, any exclusion is not applicable.

I

First Assignment of Error

{¶ 8} "The trial court erred when it granted the intervening defendants' cross motions for summary judgment, denied plaintiff medical assurance's motion for

summary judgment, and declared that Medical Assurance owes Dr. Dillaplain a duty to defend and indemnify the underlying Coleman lawsuit."

{¶ 9} When reviewing the trial court's decision on a motion for summary judgment, an appellate court's review is de novo. *Grafton v. Ohio Edison Co.* (1996), 77 Ohio St.3d 102, 105, 671 N.E.2d 241. "De novo review means that this court uses the same standard that the trial court should have used, and we examine the evidence to determine whether as a matter of law no genuine issues exist for trial." *Brewer v. Cleveland City Schools Bd. of Edn.* (1997), 122 Ohio App.3d 378, 383, 701 N.E.2d 1023, citing *Dupler v. Mansfield Journal Co.* (1980), 64 Ohio St.2d 116, 119–120, 18 O.O.3d 354, 413 N.E.2d 1187. Therefore, the trial court's decision is not granted any deference by the reviewing appellate court with respect to issues of law presented in the appeal. *Brown v. Scioto Cty. Bd. of Commrs.* (1993), 87 Ohio App.3d 704, 711, 622 N.E.2d 1153.

{¶ 10} A policy of liability insurance imposes a duty on the insurer to defend and indemnify the insured against claims of persons arising out of an occurrence of an insured risk that creates potential legal liability in the insured. That duty is generally described as a duty of "coverage." An "exclusion" is an "insurance policy provision that excepts certain events or conditions from coverage." Black's Law Dictionary (7th Ed.Rev.1999) 585–586. Therefore, an exclusion applies only to an insured risk that the policy otherwise covers.

{¶ 11} The risk insured by the Medical Assurance policy is Dillaplain's potential legal liability arising from a "medical incident" that occurred on or after January 27, 1983.

{¶ 12} In construing the terms of exclusions in an insurance policy, courts are guided by certain rules of construction, and the insurer has the burden of proving that any policy exclusions deny coverage under the policy. *Continental Ins. Co. v. Louis Marx Co., Inc.* (1980), 64 Ohio St.2d 399, 401, 18 O.O.3d 539, 415 N.E.2d 315. "Where a policy of insurance prepared by an [insurance company] provides generally for certain coverage, exclusions from such coverage must be expressly provided for or must arise by necessary implication from the words used in the policy." *Butche v. Ohio Cas. Ins. Co.* (1962), 174 Ohio St. 144, 21 O.O.2d 418, 187 N.E.2d 20, syllabus. "It is well-settled law in Ohio that '[w]here provisions of a contract of insurance are reasonably susceptible of more than one interpretation, they will be construed strictly against the insurer and liberally in favor of the insured.' * * * *King v. Nationwide Ins. Co.* (1988), 35 Ohio St.3d 208, 519 N.E.2d 1380, syllabus; see, also, *Buckeye Union Ins. Co. v. Price* (1974), 39 Ohio St.2d 95, 68 O.O.2d 56, 313 N.E.2d 844. It is axiomatic that this rule cannot be employed to create ambiguity where there is none. It is only when a provision in a policy is susceptible of more than one reasonable interpretation that an ambiguity exists in which the provision must be resolved in favor of

the insured." (Emphasis omitted.) *Hacker v. Dickman* (1996), 75 Ohio St.3d 118, 119–120, 661 N.E.2d 1005.

{¶ 13} The "fundamental goal in insurance policy interpretation is to ascertain the intent of the parties from a reading of the contract in its entirety, and to settle upon a reasonable interpretation of any disputed terms in a manner calculated to give the agreement its intended effect." *Burris v. Grange Mut. Cos.* (1989), 46 Ohio St.3d 84, 89, 545 N.E.2d 83.

{¶ 14} "The Ohio Supreme Court also has stressed that while policy exclusions 'will be interpreted as applying only to that which is clearly intended to be excluded * * * [,] the rule of strict construction does not permit a court to change the obvious intent of a provision just to impose coverage.' *Hybud Equip. Corp. v. Sphere Drake Ins. Co., Ltd.* (1992), 64 Ohio St.3d 657, 665, 597 N.E.2d 1096." (Emphasis omitted.) *Colter v. Spanky's Doll House*, Montgomery App. No. 21111, 2006-Ohio-408, 2006 WL 235045, at ¶ 29.

{¶ 15} Medical Assurance argues that the phrase "the first date coverage is provided" refers to January 1, 2002, since that is the "policy period" listed on the coverage summary, whereas Dillaplain argues that "the first date coverage is provided" is January 27, 1983, since that is the retroactive date of the policy. Medical Assurance argues that the retroactive date in the policy "specifies the earliest occurrence to be covered," but that such retroactive date is not the "first date coverage is provided." Medical Assurance quotes *Gomolka v. State Auto. Mut. Ins. Co.* (1982), 70 Ohio St.2d 166, 172, 24 O.O.3d 274, 436 N.E.2d 1347, that "[o]ne may not regard only the right hand which giveth, if the left hand also taketh away." However, this is true only so long as it is unambiguously taken away. Even if the exclusion were reasonably susceptible to both alternative interpretations, then such ambiguity "must be resolved in favor of the insured." *Hacker*, 75 Ohio St.3d at 120, 661 N.E.2d 1005.

{¶ 16} Medical Assurance argues that construction in favor of the insured renders the exclusion meaningless. It argues that since the policy does not cover any medical incident occurring prior to January 27, 1983, an exclusion that simply excludes medical incidents prior to January 27, 1983, is, at most, redundant.

{¶ 17} The trial court found that the "exclusion has meaning and would have applicability to a medical incident as defined in the policy as a single act or omission or a series of related acts or omissions. If an act or omission or a series of related acts or omissions first occurred before January 27, 1983, notwithstanding that other related acts or omissions occurred after January 27, 1983," the exclusion would prevent that "medical incident" from coverage.

{¶ 18} We find nothing in the policy that requires a "medical incident" in order to be covered to have *begun* after the retroactive date. To the contrary, the

coverage provision includes any medical incident that "occurred on or after the retroactive date." A medical incident that includes a continuing course of professional services relating to substantially the same medical condition is a single medical incident. Therefore, a single medical incident spanning a period of time both before and after the retroactive date would trigger the coverage provision, since it occurred on or after the retroactive date, but also the exclusion, since it also occurred prior to the first date coverage is provided under this policy. Such medical incidents (and conception through birth is, by physiological and the policy's definition, one of them) would be covered by the policy but then arguably excluded since it also occurred prior to the retroactive coverage date.

 {¶ 19} Additionally, while it is true that an exclusion can "taketh away" what the policy "giveth,"[1] an endorsement can "giveth it back." An endorsement must be read as if its terms were printed directly in the body of the general policy. *Jay Huddle Storage, Inc. v. Midwestern Indemn. Co.* (Jan. 13, 1986), Henry App. No. 7-84-13, 1986 WL 806. However, in interpreting the effect of endorsements in relation to the general policy provisions, an endorsement must be read as a modification of a policy if a clear inconsistency appears. *Workman v. Republic Mut. Ins. Co.* (1944), 144 Ohio St. 37, 28 O.O. 564, 56 N.E.2d 190.

{¶ 20} The endorsement by its specific, unambiguous language provides coverage for a medical incident that occurred after January 27, 1983, and prior to January 1, 2003, but which is first reported after January 27, 2003. Coverage is thus provided for the alleged malpractice that occurred in 1993, since that was after 1983 and was first reported to Medical Assurance in 2005 when the suit was filed. Medical Assurance argues that the reporting endorsement is applicable only to claims covered "under the terms and conditions of the policy" and this claim is excluded under paragraph III, K. First, we have found that it is not so excluded. Further, this interpretation of the reporting endorsement renders the endorsement "meaningless and redundant."

{¶ 21} Medical Assurance argues that this "leads to an absurd result" and that the parties never intended to provide coverage for a medical incident prior to the 2002 date of the policy when the potential claim had already been reported to another insurance company; again, we are constrained to interpret, pursuant to rules of construction, the actual language of the policy and endorsement.

{¶ 22} Our holding that there is an ambiguity is more than a finding that the policy could have been worded more clearly or that certain words and phrases, even when read together with all the other words and phrases in the policy and endorsement, are confusing or capable of different or multiple meanings. Nor is

---

1. Or as said by Tom Waits in "Step Right Up" (copyright 1976, 5th Floor Music, Inc. ASCAP), "what the large print giveth, the small print taketh away."

the fact that attorneys, magistrates, trial judges, and appellate judges do not agree on a "reasonable interpretation" per se proof of legal ambiguity. However, reading an insurance policy or any contract should not be a hermeneutic exercise engaged in after the fact when each party's analytical objectivity and precontract intent have merged with hindsight bias. With the trial court's and our finding that the language is ambiguous, the law requires that the policy be interpreted strictly against the drafter and liberally in favor of the insured, which is exactly what the trial court did. Moreover, the reporting endorsement provides coverage with the facts before the trial court.

{¶ 23} The first assignment of error is overruled.

## II

### Second Assignment of Error

{¶ 24} "The trial court erred when it denied Medical Assurance's motion for leave to amend its complaint to request a declaration that it had no duty to defend or indemnify under the policy's fraud/misrepresentation condition."

{¶ 25} Civ.R. 15(A) provides that "[l]eave of court [to amend a pleading] shall be freely given when justice so requires." The trial court found that "justice will not be served by the court's granting the motion for leave to amend the complaint."

{¶ 26} The complaint for malpractice was filed on May 9, 2005; the declaratory judgment action was filed on August 9, 2007. On November 12, 2008, Medical Assurance suggested for the first time that Dillaplain failed to disclose, at the time when he initially applied for the policy, the incident that is the subject of the pending malpractice lawsuit.

{¶ 27} Medical Assurance did not raise the defense of fraud, which is a subject of General Condition XII, in its reservation-of-rights letter to Dillaplain or in its declaratory judgment action; Medical Assurance did not raise the condition in its answer to the counterclaims against it; Medical Assurance did not raise it in response to specific interrogatories concerning policy defenses; Medical Assurance did not raise it in its motion for summary judgment, in response to the defendants' cross-motions for summary judgment, or in any other pleadings or filings; Medical Assurance stipulated on the record before the magistrate that the only reason it contested coverage was Exclusion K (Medical Assurance argues it made no explicit stipulation regarding any fraud-related claim, but the record is clear that it never suggested such a claim in the discussion with opposing counsel or the magistrate preceding the submission of the declaratory-judgment summary-judgment motions to the magistrate).

{¶ 28} Medical Assurance raised the General Condition XII issue for the first time in November 2008 in its objections to the magistrate's decision that found that the insurance company had a duty to defend and indemnify and when it "contemporaneously moved" to amend its declaratory judgment action. At no time did Medical Assurance allege that the reason it did not raise the issue earlier was that it did not become aware, despite reasonable diligence, of the suspected fraud until shortly before it filed its motion to amend.

{¶ 29} "The grant or denial of leave to amend a pleading is discretionary and will not be reversed absent an abuse of discretion." *Englewood v. Turner*, 178 Ohio App.3d 179, 2008-Ohio-4637, 897 N.E.2d 213, ¶ 49. An abuse of discretion implies an arbitrary, unreasonable, unconscionable attitude on the part of the trial court. *State v. Adams* (1980), 62 Ohio St.2d 151, 16 O.O.3d 169, 404 N.E.2d 144. Where the issue on review has been confided to the discretion of the trial court, the mere fact that the reviewing court would have reached a different result is not enough, without more, to find error. *EnQuip Technologies Group, Inc. v. Tycon Technoglass S.R.L.*, Greene App. No. 2009–CA–42, 2010-Ohio-28, ¶ 131 (Fain, J., concurring). The issues had been framed and extensive discovery had taken place when the magistrate rendered his decision. Only then did Medical Assurance seek to add a claim of violation of the policy based on fraud or misrepresentation on the application for the policy. We review the court's decision, based on the record as of the time it was made. The court did not abuse its discretion in denying the motion to amend to add such a claim.

{¶ 30} The second assignment of error is overruled.

### III

{¶ 31} The assignments of error are overruled, and the judgment of the trial court is affirmed.

Judgment affirmed.

FAIN, J., concurs.

GRADY, J., dissents.

GRADY, Judge, dissenting.

{¶ 32} I respectfully dissent from the decision of the majority. I would instead hold that the Medical Assurance Company, Inc., owes no duty to provide coverage to Robert P. Dillaplain, M.D., on the claim for coverage he made with respect to the medical-malpractice action commenced against him in 2005.

{¶ 33} A policy of liability insurance is a contract in which, in consideration of the insured's payment of an agreed premium, the insurer promises that during

the term of the policy the insurer will defend and indemnify the insured against risks of loss from legal liability that arise out of the occurrence of a defined event. That promise is generally referred to as the insurer's duty of coverage.

{¶ 34} The policy that Medical Assurance issued to Dillaplain became effective on January 1, 2002, and states that its term or "policy period" is from January 1, 2002, to January 1, 2003. The policy period was subsequently extended by agreement of the parties to and including the year 2005.

{¶ 35} The coverage Medical Assurance promised to provide Dillaplain states: "We agree to pay on behalf of each insured all sums which such insured shall become legally obligated to pay as **damages** because of any **medical incident** which occurs after the **retroactive date** applicable to such insured and which is first **reported** during the **policy period**." The policy also provides: "**Retroactive date** means the **retroactive date** applicable to each **insured** as specified in the **Coverage Summary**." That date is specified in the Coverage Summary as "1/27/1983."

{¶ 36} The "Definitions" provision of the policy states:

{¶ 37} "**Medical Incident** means:

{¶ 38} "A. A single act or omission or a series of related acts or omissions arising out of the rendering of, or failure to render, **professional services** to any one person by an **Insured** or any person for whose acts or omissions an **insured** is legally responsible, which results, or is likely to result, in **damages**;"

{¶ 39} "* * *

{¶ 40} "For purposes of this definition, treatment of mother and fetus (or fetuses) from conception through postpartum care constitutes a single **medical incident**, and a continuing course of **professional services** relating to substantially the same medical condition constitutes a single **medical incident**."

{¶ 41} The exclusion from coverage in issue provides:

{¶ 42} "III. EXCLUSIONS

{¶ 43} "We will not pay **damages** because of any of the following, and we will not provide a defense for any suit alleging any of the following:

{¶ 44} "* * *

{¶ 45} "K. Any **medical incident** which has been **reported** to another insurance carrier prior to the first date coverage is provided under the **policy**; any **medical incident** which occurred prior to the first date coverage is provided under the **policy**, if on such **date**, the insured knew or believed, or had reason to know or believe, that such **medical incident** had occurred; or any **medical**

**incident** that occurred during a period in which the **Insured** was not covered under a policy of professional liability insurance." (Boldface sic.)

{¶ 46} A medical-malpractice action was commenced against Dillaplain in 2005. He presented Medical Assurance with his claim for coverage in the action. It is undisputed that the medical incident or incidents on which the claims for relief in the 2005 action are founded occurred in 1993 and 1994. It is also undisputed that Dillaplain had reported those same medical incidents to another insurance carrier in 1995.

{¶ 47} Medical Assurance asked the common pleas court to construe its policy and determine what duty of coverage, if any, it owes Dillaplain with respect to the 2005 action. Medical Assurance argues that by reason of Dillaplain's 1995 report of the same medical incident to another carrier, Medical Assurance is relieved of its duty of coverage by the exclusion in Section III.K. of its policy. The trial court rejected that argument and found that Medical Assurance owes Dillaplain a duty of the coverage he claimed. That judgment is now before us for review. Our standard of review is de novo.

{¶ 48} In construing the terms of the exclusions section of the insurance policy, we are guided by the rules of contract interpretation. First, "[i]t is well-settled law in Ohio that '[w]here provisions of a contract of insurance are *reasonably* susceptible of more than one interpretation, they will be construed strictly against the insurer and liberally in favor of the insured.' (Emphasis added.) *King v. Nationwide Ins. Co.* (1988), 35 Ohio St.3d 208, 519 N.E.2d 1380, syllabus; see, also, *Buckeye Union Ins. Co. v. Price* (1974), 39 Ohio St.2d 95, 68 O.O.2d 56, 313 N.E.2d 844. It is axiomatic that this rule cannot be employed to create ambiguity where there is none. It is only when a provision in a policy is susceptible of more than one reasonable interpretation that an ambiguity exists in which the provision must be resolved in favor of the insured." *Hacker v. Dickman* (1996), 75 Ohio St.3d 118, 119–120, 661 N.E.2d 1005.

{¶ 49} Also, "[t]he fundamental goal in insurance policy interpretation is to ascertain the intent of the parties from a reading of the contract in its entirety and to settle upon a reasonable interpretation of any disputed terms in a manner calculated to give the agreement its intended effect." 57 Ohio Jurisprudence 3d (2005) 394, Insurance, Section 315. "Thus, whenever two constructions can be placed on a written contract of insurance, one of which will give force to all of its provisions, that one must be adopted." 57 Ohio Jurisprudence 3d (2005) 402, Insurance, Section 320.

{¶ 50} "The Ohio Supreme Court also has stressed that while policy exclusions 'will be interpreted as applying only to that which is clearly intended to be excluded * * *[,] the rule of strict construction does not permit a court to change the obvious intent of a provision just to impose coverage.' *Hybud Equip. Corp. v.*

*Sphere Drake Ins. Co., Ltd.* (1992), 64 Ohio St.3d 657, 665, 597 N.E.2d 1096." (Emphasis omitted.) *Colter v. Spanky's Doll House,* Montgomery App. No. 21111, 2006-Ohio-408, 2006 WL 235045, at ¶ 29.

{¶ 51} The trial court adopted the decision of its magistrate, who found that the exclusion does not apply to the 2005 claim. The magistrate reasoned that the operative clause in the exclusion, "reported to another carrier prior to the first date coverage is provided under the policy," is ambiguous, in that it may refer either to a report to another carrier that was made prior to January 1, 2002, or to a report to another carrier that was made prior to January 27, 1983. The latter alternative would exclude Dillaplain's 1995 report to another carrier from application of the exception, because the exception could then apply only to reports of medical incidents that occurred before January 27, 1983. Because an ambiguity must be construed in favor of the alternative that provides coverage, the trial court found that the exclusion therefore refers to January 27, 1983.

{¶ 52} The trial court's analysis confuses the point in time after which a risk of loss can occur for which Medical Assurance owes a duty to provide coverage on a claim made by Dillaplain, with the point in time when Medical Assurance assumed the duty of coverage it owes. Medical Assurance assumed that duty on January 1, 2002, when the policy it issued to Dillaplain became effective. The risks of losses to Dillaplain that the policy covers can arise from medical incidents that occurred as early as January 27, 1983, but no coverage was *then* provided, because no duty of coverage *then* existed. Instead, coverage "is provided" under the terms of the policy only on and after January 1, 2002, when claims by Dillaplain requiring coverage may be made. Therefore, Dillaplain's report to another carrier in 1995 of the same medical incident on which the 2005 action against him is founded triggers the exclusion and relieves Medical Assurance of its duty of coverage with respect to Dillaplain's claim for coverage in connection with the medical-malpractice action that was commenced against him in 2005.

{¶ 53} The trial court erred when it found an ambiguity, because the terms of the exclusion are not reasonably susceptible to more than one interpretation. Reasoning that its reference to when coverage "is provided" means January 27, 1983, creates an ambiguity when there is none. The policy creates coverage that "is provided" beginning on January 1, 2002, and only then. Furthermore, reading the contract in its entirety and in a manner calculated to give the agreement its intended effect, and to give force to all of its provisions, it is clear that the disputed provision cannot refer to the alternative date the trial court settled on.

{¶ 54} An "exclusion" is "[a]n insurance-policy provision that excepts certain events or conditions from coverage." Black's Law Dictionary (7th Ed.Rev. 1999) 585–586. Therefore, an exclusion can only apply to a claim for coverage of losses

arising from an insured risk which the policy otherwise covers. Under no interpretation of its terms does the policy provide coverage for claims made by Dillaplain for a risk of losses arising out of medical incidents that occurred prior to January 27, 1983. By selecting that date as "the first date coverage is provided under the policy," the trial court confined application of the exclusion to claims by Dillaplain concerning medical incidents for which no risk of loss is covered by the policy. That interpretation renders the exclusion wholly superfluous and therefore a nullity. Parties to a contract cannot be assumed to have agreed to a term that is meaningless in relation to the rights and duties the contract creates. The interpretation is therefore unreasonable, preventing its application even were there an ambiguity.

{¶ 55} Appellees argue that the construction given the exclusion by the trial court would not render the exclusion meaningless. They contend that in that application, the exclusion could nevertheless apply to acts or omissions that occurred after January 27, 1983, but that were part of a continuing course of treatment that began prior to that date, though they were part of a single "medical incident." The majority embraces that argument and adopts it as a finding, but it simply does not hold water.

{¶ 56} In defining the term "medical incident," the policy provides: "For purposes of this definition, treatment of mother and fetus (or fetuses) from conception through postpartum care *constitutes a single medical incident,* and a continuing course of professional services relating to substantially the same medical condition *constitutes a single medical incident.*" (Emphasis added.) Therefore, being a part of a continuing course of treatment that began prior to January 27, 1983, renders acts and omissions that occurred after that date medical incidents to which the policy extends no coverage at all in relation to the risk of losses arising from them. An exclusion cannot create coverage; it can only preclude coverage which is otherwise provided.

{¶ 57} I would sustain the second assignment of error on a finding that the trial court erred when it granted the motion for summary judgment filed by appellees and would remand the case to the trial court for further proceedings consistent with the views I have stated.