[Cite as *Schroeder v. Henness*, 2013-Ohio-2767.]

IN THE COURT OF APPEALS FOR MIAMI COUNTY, OHIO

BRENT SCHROEDER, et al.          :

    Plaintiffs-Appellants          :          C.A. CASE NO.    2012 CA 18

v.          :          T.C. NO.    10-CV-471

DOUGLAS HENNESS, et al.          :          (Civil appeal from
                                     Common Pleas Court)

    Defendants-Appellees          :

                                            :

. . . . . . . . . .

**O P I N I O N**

Rendered on the _____28th_____ day of _____June_____, 2013.

. . . . . . . . . .

JEREMY M. TOMB, Atty. Reg. No. 0079664, 124 W. Main Street, Troy, Ohio 45373
    Attorney for Plaintiffs-Appellants

ROBERT M. HARRELSON, Atty. Reg. No. 0003302 and WILLIAM M. HARRELSON II,
Atty. Reg. No. 0087957, 12 S. Cherry Street, P. O. Box 8, Troy, Ohio 45373
    Attorneys for Defendants-Appellees

JEFFREY A. STEPNER, Atty. Reg. No. 0068557, 10300 Alliance Road, Suite 135,
Cincinnati, Ohio 45242
    Attorney for Richard Robbins

MARY BARLEY-McBRIDE, Atty. Reg. No. 0037204, 2 Miranova Place, Suite 500,
Columbus, Ohio 43215
    Attorney for Dorothy Buchanan and Team Seagraves

FROELICH, J.

**{¶ 1}**  Brent and Kelly Schroeder appeal from a judgment of the Miami County Court of Common Pleas, which granted Douglas and Melanie Henness's motion for summary judgment on various claims related to the sale of a home.  The Schroeders' complaint included claims for fraud, failure to disclose, negligence, negligent misrepresentation, and wrongful concealment of a defect in the home they purchased from the Hennesses in 2008; they sought compensatory and punitive damages and/or to rescind the sale.

**{¶ 2}**  Because we agree with the trial court's conclusions that some of the Schroeders' claims of fraud were not pled with sufficient particularity, and that no genuine issue of material fact existed as to the claims of fraud, wrongful concealment, and failure to disclose that were pled with particularity, the judgment of the trial court will be affirmed as to those claims.  The trial court's conclusion that there was no genuine issue of material fact as to negligence and negligent misrepresentation will also be affirmed.

I

**{¶ 3}**  The following facts are undisputed.

**{¶ 4}**  In 2004, the Hennesses contracted to build a home at 2592 Peebles Road in Troy.  Richard Robbins, dba Dick Robbins Contracting ("Robbins Contracting"), built the home.  During construction, measures were taken to ensure drainage away from the property, including the installation of an underground cistern and tile drainage systems and the creation of a pond on the property to which water drained.  After the home was constructed, some additional grading was performed to address puddling of water near the

driveway after rain.

{¶ 5}     In 2005, a single instance of flooding occurred in the basement of the home, which was attributable to a malfunctioning sump pump.   Robbins Contracting hired a company named ServPro to clean and repair the flooded areas of the basement and to replace the carpet, baseboards, and drywall.   There were no other incidents with the sump pump or with basement flooding.

{¶ 6}     In 2007, the Hennesses listed the house for sale through their real estate agent, Dorothy Buchanan.   They completed a Residential Property Disclosure Form, as required by R.C. 5302.30.    After discussions with the agent about their disclosure obligations, the Hennesses did not disclose the prior problem with the sump pump in Section D of the disclosure form related to Water Intrusion.

{¶ 7}     The Schroeders contracted to purchase the house in 2008, "as is," with provisions in the contract that allowed the Schroeders to conduct a whole house inspection and inspections for various other conditions, including mold.    The purchase was completed in July 2008.

{¶ 8}     In 2009, the Schroeders discovered mold in the master bedroom when they replaced the carpeting.   According to the Schroeders' evidence, mold was present on the carpet, baseboards, drywall, subfloor and carpet tack strips in the master bedroom, on the sill plate and studs in the substructure, and in the crawl space.   The Schroeders further discovered that the exterior brick veneer of the house "had been allowing moisture to penetrate the home[']s vapor barrier," which allowed mold to exist in parts of the house above and below grade.

{¶ 9} In May 2010, the Schroeders filed a complaint against the Hennesses, alleging eight "causes of action": fraud, failure to disclose, negligence (statutory), negligent misrepresentation, rescission, wrongful concealment, promissory estoppel, and punitive damages. The Schroeders claimed that they suffered "substantial damages as a direct result of [the Hennesses'] actual malice and fraud" in failing to disclose prior water damage to the house and that they would not have purchased the property if the prior water problems had been disclosed to them. The Hennesses filed an answer as well as a third-party complaint against their real estate agent, Buchanan, and her company, RE/MAX Alliance Realty. With the court's approval, the Hennesses later amended the third-party complaint to add the builder, Robbins Contracting, as a third-party defendant.

{¶ 10} In May 2012, the Hennesses moved for summary judgment against the Schroeders. They argued that no genuine issue of material fact existed as to the claims of fraud, wrongful concealment, and failure to disclose, that the "as is" clause in the contract and the doctrine of caveat emptor precluded the Schroeders' claims, and that none of the Schroeders' alleged damages was proximately caused by the alleged misrepresentation.

{¶ 11} The Schroeders opposed the motion for summary judgment. In their memorandum contra, the Schroeders raised, for the first time, numerous issues related to the Hennesses' efforts to control and improve drainage around the exterior of the house. They also argued that the "as is" clause applied only to patent defects, not latent ones, and that they had created a genuine issue of material fact as to the issues raised in their complaint.

{¶ 12} In June 2012, the trial court granted the Hennesses' motion for summary judgment. With respect to the Schroeders' fraud and wrongful concealment claims, which were based on the failure to disclose that the basement had flooded in 2005, the trial court

found that the single sump pump failure was not a material defect and that "[t]here is no evidence that the mold found by [the Schroeders] in 2009 was caused by water in the basement resulting from the sump pump failure in 2005." The trial court found that the wrongful concealment claim required a positive act of concealment and that there was no genuine issue of material fact that the Hennesses had acted to conceal the sump pump malfunction.

{¶ 13} The trial court further concluded that many of the assertions made by the Schroeders in their response to the Hennesses' motion for summary judgment related to undisclosed "latent defects" which had not been pled with particularity, as required by Civ.R. 9(B). Because the Schroeders had failed to properly plead these claims, which sounded in fraud or misrepresentation, the trial court concluded that they were not properly before the court and could not be relied upon to defeat summary judgment.

{¶ 14} The court also found no basis for the Schroeders' negligence claim, reasoning that the property was purchased "as is," and the doctrine of caveat emptor therefore barred claims by the purchaser against the seller for negligent representation. The court rejected the Schroeders' claim for recision because it found no genuine issue as to the existence of fraud. The court distinguished the making of a promise from the misrepresentation of an existing or past fact, and it found no basis for the Schroeders' claim of promissory estoppel. Finally, the court found no basis for an award of punitive damages, which are not available under Ohio law if no compensatory damages have been awarded. Thus, the Hennesses' motion for summary judgment was granted in its entirety. The trial court further concluded that the Schroeders had, in fact, been informed about external water

and drainage issues before the closing and had nonetheless proceeded with the purchase.

{¶ 15} The Schroeders appeal from the trial court's decision to award summary judgment, raising three assignments of error.

II

{¶ 16} The first assignment of error states:

THE TRIAL COURT ERRED BY DETERMINING THAT APPELLANTS'

FRAUD CLAIM SHOULD BE LIMITED BECAUSE IT FAILED TO

SATISFY CIV.R. 9(B).

{¶ 17} The Schroeders contend that the trial court erroneously believed it was "confined to the four corners of the complaint" in determining whether they had pled fraud with the particularity required by Civ.R. 9(B). They also assert that failure to comply with Civ.R. 9(B) is properly raised in a motion to dismiss pursuant to Civ.R. 12(B)(6), but that it is otherwise waived. Finally, they contend that, "at the summary judgment stage, all of the discovered and proffered evidence should be considered, rather than the pleading only."

*A. Requirement to Plead Fraud with Particularity*

{¶ 18} Generally, the Ohio Civil Rules require "notice pleading" rather than "fact pleading." *Lisboa v. Tramer*, 8th Dist. Cuyahoga No. 97526, 2012-Ohio-1549, ¶ 27, citing *Salamon v. Taft Broadcasting Co.*, 16 Ohio App.3d 336, 338, 475 N.E.2d 1292 (1st Dist.1984). Notice pleadings merely require that a claim concisely set forth those operative facts sufficient to give "fair notice of the nature of the action." *Id.*, citing *DeVore v. Mutual of Omaha Ins. Co.*, 32 Ohio App.2d 36, 38, 288 N.E.2d 202 (7th Dist.1972); Civ.R. 8(A) and 8(E). However, pursuant to Civ.R. 9(B), allegations of fraud must be pled with specificity. *Id.* Civ.R. 9(B)

states that, "[i]n all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity. Malice, intent, knowledge, and other condition of mind of a person may be averred generally."

**{¶ 19}** Fraud has the following elements: (1) a representation (or concealment of a fact when there is a duty to disclose), (2) that is material to the transaction at hand, (3) made falsely, with knowledge of its falsity or with such utter disregard and recklessness as to whether it is true or false that knowledge may be inferred, and (4) with intent to mislead another into relying upon it, (5) justifiable reliance, and (6) resulting injury proximately caused by the reliance. *Volbers-Klarich v. Middletown Mgt., Inc.*, 125 Ohio St.3d 494, 2010-Ohio-2057, 929 N.E.2d 434, ¶ 27.

**{¶ 20}** To properly plead a claim for fraud, the plaintiff must: (1) specify the statement(s) claimed to be false; (2) state in the complaint the time and place where the statement(s) were made; and (3) identify the defendant claimed to have made the statement(s). *Korodi v. Minot,* 40 Ohio App.3d 1, 4, 531 N.E.2d 318 (10th Dist.1987), citing *Goldman v. Belden*, 754 F.2d 1059, 1069-1070 (2d Cir.1985). These requirements are intended to place potential defendants on notice of the precise statement(s) being alleged as fraudulent, which is all that Civ.R. 9(B) requires. *Id.*

### B. The Allegations of Fraud

**{¶ 21}** With respect to their claim of fraud, the Schroeders' complaint alleged that the Hennesses had "falsely and fraudulently stated that there had been no problems, including water intrusion, with their home at 2592 Peebles Road, Troy, Ohio, in the Residential Property Disclosure Form (Exhibit A)." The Schroeders claimed that the Hennesses knew their

representations to be false because they had "severe flooding in their home in 2004,"[1] and that the statements were made to induce the Schroeders to buy the property. The Schroeders claimed to have relied on the Hennesses' "fraudulent representations" and to have incurred significant damages in repairing the property as a result thereof.

{¶ 22} In a separately listed cause of action for "failure to disclose," the Schroeders again cited their reliance on the Residential Property Disclosure Form and the "severe flooding" that occurred in the home when the sump pump malfunctioned. They claim that mold was "a foreseeable result of severe flooding" and that they later found mold in the "basement, master bedroom, guest bedroom, and other areas of the home."

{¶ 23} In the Hennesses' motion for summary judgment, they noted that the Schroeders' purchased the property "as is" and could not claim that the Hennesses had misrepresented its condition. They also noted that the Schroeders' expert, Bill Treasure, had been unable to relate the mold found in the master bedroom to the sump pump malfunction of 2005. Treasure attributed the mold to water coming through the exterior brick and mortar of the house. The Hennesses asserted that the flooding was not a defect in the property and that the Schroeders failed to establish any of the elements of fraud or wrongful concealment.

{¶ 24} In the Schroeders' Memorandum Contra Motion for Summary Judgment, they asserted that there had been drainage problems with the lot before the house had even been constructed, that issues with the water table presented themselves during construction of the foundation, and that the Hennesses, with the help of their contractor, developed an "elaborate

---

[1] The flooding caused by the malfunctioning sump pump actually occurred in 2005, but the timing is irrelevant to the claims and defenses.

defense of the house from the constant intrusion of water." This "defense" included the installation of sump pumps in the basement, a cistern in the backyard, and a pond to which the cistern drained. The Schroeders claimed that the contractor and the Hennesses had devised this "scheme" despite "the known fact that the gravity flow from the house to the pond was inadequate." Additionally, the Schroeders asserted that water collected on the ground "outside the pond," which the Hennesses must have observed when they lived in the house, and that the Hennesses had "moved some earth to help fend off the surface water and expanded the size of the pond."

{¶ 25} The Schroeders further claimed that, because the Hennesses perceived the standing water on their property as a "dead giveaway to prospective purchasers," Doug Henness initiated an email conversation with the Hennesses' real estate agent, Buchanan, about whether to disclose to buyers that "water does pool up for a while" in certain parts of the yard after a hard rain. (The Schroeders argument does not reference the portions of the email in which Mr. Henness stated that the pooling water "definitely does not effect [sic] the house and it drains away. We have not considered it a problem.")

{¶ 26} Moreover, the Schroeders relied on several sections of the Residential Property Disclosure Form to refute the Hennesses' assertion that they had failed to show a genuine issue of material fact with respect to fraud: Section D, related to water intrusion; Section J, related to drainage and erosion; and Section M, related to underground storage tanks and wells. The Schroeders argued that the Hennesses' assertions, under each of these sections, that they did not know of any issues demonstrated their fraud. The Schroeders also referred to the "accidental crushing of drain lines leading to the pond," as well as the flooding related to the broken sump

pump in 2005, claiming that the non-disclosure of these incidents was part of an effort to conceal problems with the house.

{¶ 27} Finally, the Schroeders claimed that the doctrine of caveat emptor, as evidenced by the "as-is" clause in the purchase contract, applies only to patent defects, not latent ones. They identified the "buried cistern, the buried pump and drainage line, the innocent-looking pond, the high water table, the ponding water, the hidden mold infestation, moisture and basement flooding incident" as "irrefragably latent, not patent," and therefore not subject to the "as is" clause.

{¶ 28} Clearly, the scope of the fraud alleged in the Schroeders' Memorandum Contra the Motion for Summary Judgment is much broader than that alleged in the complaint. The complaint alleges only one fraudulent misrepresentation: the denial of water intrusion under Section D of the Residential Property Disclosure Form. This alleged nondisclosure was based on a single incident of flooding in the basement in 2005, when a sump pump broke. The Memorandum Contra raises issues going back to the construction of the home, the grading of the property, and the manner in which the Hennesses and their contractor planned to accomplish the exterior drainage of the home, as well as improvements they made to that system after the house was completed. The memorandum contra suggests that the plan for the drainage of the house amounted to fraud, because it concealed the water problems that would have otherwise existed. It also attempts to rely on specific sections of the Residential Property Disclosure Form that were not mentioned in the complaint as a basis for the alleged fraud.[2]

---

[2] We do not share the Schroeders' view that attaching the disclosure form to the complaint was sufficient to allege fraud with particularity as to all of the elements of the disclosure form.

{¶ 29} The claim of fraud alleged in the complaint was pled with particularity, but it related only to the sump pump problem in 2005. The Hennesses sought summary judgment on that claim. The Schroeders could not, in response to the motion for summary judgment, raise numerous additional allegations of fraud that were not pled at all – much less with the particularity required by Civ.R. 9(B) – in the complaint. Simply stated, a party's response to a motion for summary judgment is not a pleading and cannot be treated as such. Thus, the trial court did not err in concluding that the allegations of fraud raised for the first time in the memorandum contra the motion for summary judgment were precluded by Civ.R. 9(B).

{¶ 30} The Schroeders argue that the trial court was permitted to consider all of the evidence properly before it when ruling on the motion for summary judgment. They also contend that the Hennesses waived their right to raise the lack of particularity in the pleadings, because a motion to dismiss pursuant to Civ.R. 12(B)(6) was the proper means to assert a failure to comply with Civ.R. 9(B), and the Hennesses did not file such a motion.

{¶ 31} The Schroeders' argument requires an analysis of the settled rule that a trial court decides a motion to dismiss "based solely on the allegations in the complaint," whereas a variety of additional materials may be considered by the court when it rules on a motion for summary judgment. *See* Civ.R. 56(C); *Sandberg v. John T. Crouch Co., Inc.,* 2d Dist. Montgomery No. 21342, 2006-Ohio-4519, ¶ 6 ("Ohio follows the well-established principle that courts may not consider evidentiary matters in ruling on motions to dismiss or motions for judgment on the pleadings."); *Collins v. National City Bank*, 2d Dist. Montgomery No. 19884, 2002-Ohio-6893, ¶ 8 ("When a motion [to dismiss] presents matters outside the pleadings, the court must convert it to a Civ.R. 56(C) motion for summary judgment."). The question

presented in a motion for summary judgment is whether there is a genuine issue of material fact regarding the claims that are before the court at the time of the motion.

{¶ 32}   This distinction between a motion to dismiss and a motion for summary judgment has no bearing, however, on the pleading requirement set forth in Civ.R. 9(B).   A party cannot avoid Civ.R. 9(B)'s pleading requirements for a fraud claim simply by presenting additional or more specific arguments sometime after its pleadings are filed.   The Rule states, under the heading of "Pleading special matters," that "[i]n all averments of fraud * * *, the circumstances constituting fraud * * * shall be stated with particularity."   The pleadings are narrowly defined by Civ.R. 7(A).   A memorandum in response to a motion for summary judgment is not a pleading, and the inclusion of specific allegations in such a memorandum does not constitute "pleading" "with particularity."

{¶ 33}   The Schroeders allege that the Hennesses waived any objection to the court's consideration of their fraud claims by failing to file a motion to dismiss.   But the original claim of fraud contained in the complaint – based on the sump pump failure in 2005 – was pled with particularity.    The Hennesses had no basis to seek dismissal of that claim based on Civ.R. 9(B).  It was only when the Schroeders raised many additional matters in opposition to the Hennesses' motion for summary judgment that this issue arose.   Thus, the Hennesses did not waive their objections by failing to file a motion to dismiss.

{¶ 34}   The trial court did not err in limiting the Schroeders' fraud claim to the one specific claim alleged in the complaint.   Its ruling on that claim will be addressed under the second assignment of error.

{¶ 35}   The first assignment of error is overruled.

III

**{¶ 36}** The second assignment of error states:

THE TRIAL COURT ERRED BY GRANTING SUMMARY JUDGMENT TO DEFENDANT-APPELLEES HENNESS FOR THE REASONS THAT GENUINE ISSUES OF MATERIAL FACT EXISTED AND DEFENDANT-APPELLEES HENNESS WERE NOT ENTITLED TO SUMMARY JUDGMENT AS A MATTER OF LAW.

**{¶ 37}** The Schroeders argue that genuine issues of material fact existed regarding the Hennesses' intentional or negligent nondisclosure of the 2005 sump pump problem, the application of sealant to the exterior brick due to absorption of moisture, the slow drainage on the lot, and the Hennesses' attempts to remedy that slow drainage. They also contend that the "as is" clause in the purchase contract did not bar their claims, and that the basement flooding in 2005 was "material."

**{¶ 38}** As we discussed above, the Schroeders did not properly plead any claims of fraud other than the nondisclosure of the sump pump problem in 2005. Thus, we need not address the Schroeders' arguments that there were genuine issues of material fact as to whether the Hennesses committed fraud in failing to disclose problems with the brick or drainage issues with the lot. (We express no opinion as to whether the Schroeders' evidence established these "facts" or a duty to disclose them.)

*A. Summary Judgment Standard*

**{¶ 39}** Pursuant to Civ.R. 56(C), summary judgment is proper when (1) there is no genuine issue as to any material fact, (2) the moving party is entitled to judgment as a matter of

law, and (3) reasonable minds, after construing the evidence most strongly in favor of the nonmoving party, can only conclude adversely to that party. *Zivich v. Mentor Soccer Club, Inc.*, 82 Ohio St.3d 367, 369-370, 696 N.E.2d 201 (1998).

{¶ 40} The moving party carries the initial burden of affirmatively demonstrating that no genuine issue of material fact remains to be litigated. *Mitseff v. Wheeler*, 38 Ohio St.3d 112, 115, 526 N.E.2d 798 (1988); *Dresher v. Burt*, 75 Ohio St.3d 280, 292, 662 N.E.2d 264 (1996). To this end, the movant must be able to point to evidentiary materials of the type listed in Civ.R. 56(C) that a court is to consider in rendering summary judgment. *Dresher* at 292-293.

{¶ 41} Once the moving party satisfies its burden, the nonmoving party may not rest upon the mere allegations or denials of the party's pleadings. *Id.*; Civ.R. 56(E). Rather, the burden then shifts to the nonmoving party to respond, with affidavits or as otherwise permitted by Civ.R. 56, setting forth specific facts that show that there is a genuine issue of material fact for trial. *Id* . Throughout, the evidence must be construed in favor of the nonmoving party. *Id.*; Civ.R. 56(C).

{¶ 42} Appellate review of the trial court's ruling on a summary judgment motion is de novo. *Helton v. Scioto Cty. Bd. of Commrs.*, 123 Ohio App.3d 158, 162, 703 N.E.2d 841 (4th Dist.1997).

### B. Intentional Non-Disclosure

{¶ 43} With respect to the sump pump failure and resultant flooding in 2005, the trial court found no genuine issue of material fact because 1) the "temporary water accumulation in the basement" that resulted from that incident did not constitute a "material defect" and 2) there was no evidence that the presence of mold in 2009 was related to the sump pump malfunction in

2005.

{¶ 44} The Schroeders' argument focuses primarily on whether the previous incident in which the basement flooded had been disclosed to them. They do not address the trial court's findings that the flooding did not constitute a material defect or that the flooding was not related to the mold found in 2009.

{¶ 45} R.C. 5302.30 charges the director of commerce to prescribe a disclosure form that sellers of residential real property must provide to purchasers. The form is "designed to permit the transferor to disclose material matters relating to the physical condition of the property to be transferred, including, but not limited to, the source of the water supply to the property * * * and any material defects in the property that are within the actual knowledge of the transferor." R.C. 5302.30(D). A duty of good faith is imposed on the seller, R.C. 5302.30(E)(1), though liability for nondisclosure does not apply to matters "not within the transferor's actual knowledge." R.C. 5302.30(F)(1).

{¶ 46} "A seller's responses or nonresponses to the questions posed by the Residential Property Disclosure Form do not warrant the good condition of the property. Rather they constitute the owner's representations concerning his actual knowledge of the condition of the property in respect to the particulars specified. A variance between the owner's representations and the truth and fact of the matters concerned may be a basis for a claim of fraud, and the seller's duty of good faith requires him to act with an honest belief or purpose in the responses he provides. However, he is not required to speculate, and is charged only to reveal the existence of conditions within his actual knowledge." *Decaestecker v. Belluardo*, 2d Dist. Montgomery No. 22218, 2008-Ohio-2077, ¶ 45.

{¶ 47}   The Residential Property Disclosure Form defines a "material defect" to include "any non-observable physical condition existing on the property that could be dangerous to anyone occupying the property or any non-observable physical condition that could inhibit a person's use of the property."

{¶ 48}   The evidence presented in support of and in opposition to summary judgment showed that, in 2005, the Hennesses discovered flooding in their basement after a heavy rain. According to the contractor, two inches of water were present; Doug Henness reported significant areas of wet rug, but no standing water.   Upon discovery of the problem, the Hennesses immediately contacted the contractor, Robbins Contracting.   Based on his conversation with Robbins, Doug Henness determined that power continued to flow to the pump, but that it was not working properly.   Robbins sent a restoration company, ServPro, to the home the same day. ServPro repaired the sump pump, which involved clearing it of construction debris that interfered with its operation.   ServPro also dried out the basement, testing the moisture content of the area every day for a couple of weeks, and replaced damaged materials including the carpet, baseboards, and drywall.   The problem never recurred.   It is undisputed that the Hennesses did not disclose this incident to the Schroeders prior to closing and checked "No" to the following question on the disclosure form: "Do you know of any current or previous water leakage, water accumulation, excess moisture or other defects to the property, including but not limited to any area below grade, basement, or crawl space?"

{¶ 49}   The trial court found:

The undisputed evidence demonstrated that the sump pump resulted in a temporary water accumulation in the basement.   The contractor who built the

home hired a company to clean up and repair the problem and it never occurred again. There was no evidence that there were any residual problems that were caused by the sump pump failure or the temporary accumulation of water. The single incident was not a "material defect" in the property. More importantly, there is no evidence that the mold problem experienced by the plaintiffs is related to the sump pump incident.

{¶ 50} The trial court properly concluded that the flood caused by the sump pump was an isolated incident and that there was no "defect" in the house to which that flooding was attributable. Although the Hennesses had made a conscious choice, after consultation with their realtor, not to disclose the incident, there is no evidence that they did so in an effort to mislead the Schroeders or to conceal a recognized problem. The Hennesses appear to have concluded that their answer to Section D was truthful, because they did not view the sump pump failure as a defect in the home.

{¶ 51} Additionally, there was no evidence that the Hennesses covered up anything in the basement, that the problem with the sump pump was anything but an isolated incident, or that there was any reason to think a problem with the pump would recur. They consented to a whole house inspection, including an inspection for mold. No evidence was presented to show that the Hennesses had ongoing or recurring water problems in their basement and tried to conceal this information from the Schroeders by false statements, by their silence on the disclosure form, or otherwise. The Schroeders also presented no evidence of any residual damage to the home from the 2005 sump pump malfunction. The trial court did not err in granting summary judgment based on its conclusion that no genuine issue of material fact existed as to whether the sump

pump failure was a material defect in the property.

{¶ 52}     Moreover, the Schroeders' argument on appeal does not address the trial court's other crucial finding: that there was no genuine issue of material fact as to whether the prior sump pump malfunction was related to the mold problems discovered in the master bedroom in 2009. Their own expert, William Treasure, testified by deposition that, if ServPro "properly remediated" the basement after the sump pump malfunction, there would be no reason to expect any residual mold to be present in the home.   He assumed that ServPro had properly remediated the problem, and presented no evidence that it had not.   Moreover, Treasure described the mold as "migrating down" from the exterior brick wall to the master bedroom and floor and "theoretically" to the concrete basement walls, with the force of gravity.   Thus, Treasure's theory about the manner in which the mold spread was consistent with his conclusion that the moisture seeped through the exterior brick and mortar, but was inconsistent with the basement as the source of the water. Simply put, the Schroeders offered no evidence that the sump pump malfunction upon which their fraud and nondisclosure claims were based caused or contributed to the mold that they discovered in 2009.   The Schroeders could not prevail on their claims of fraud, misrepresentation, or wrongful concealment without establishing a genuine issue of material fact that they suffered damages proximately caused by the Hennesses' alleged failure to disclose.   Because the Schroeders failed to create a genuine issue of material fact as to the issue of proximate causation, the trial court did not err in granting summary judgment.

*C. Negligent Non-Disclosure and the "As Is" Clause*

{¶ 53}     The Schroeders contend that the trial court erred in concluding that the "as is" clause in the contract barred their claims for intentional or negligent non-disclosure, because the

"as is" clause applied to patent defects, but not latent ones.

{¶ 54} The trial court found that the Schroeders' claims for nondisclosure, negligence, and negligent misrepresentation were barred by the doctrine of caveat emptor, because of the "as is" clause in the contract, and because "the doctrine of caveat emptor bars claims by the purchaser against the seller for negligent misrepresentation." It also stated that "[t]here is no remedy for negligent completion of the form required by R.C. 5302.30 except when it rises to the level of fraud."

{¶ 55} The Schroeders correctly observe that the doctrine of caveat emptor, as embodied in an "as is" clause, "only applies * * * to patent defects: those which are readily discoverable to prospective purchasers on inspection. The purchaser does not likewise assume the risk of latent defects: those which are not readily discoverable. However, neither does the seller have a duty to disclose the existence of latent defects unless he knows of them." *Decaestecker v. Belluardo*, 2d Dist. Montgomery No. 22218, 2008-Ohio-2077, ¶ 37.

{¶ 56} Because a seller of real property in Ohio must complete a statutorily required form, disclosing "material matters relating to the physical condition of the property and any material defect relating to the physical condition of the property that is within the actual knowledge of the seller," an "as is" clause may not shield a seller from liability for nondisclosure of a material, latent defect that is actually known to him. *Graber v. Emch*, 6th Dist. Sandusky No. S-11-018, 2012-Ohio-1395, ¶ 24-25, citing *Abrogast v. Werley*, 6th Dist. Lucas No. L-09-1131, 2010-Ohio-2249, ¶ 37-38.

{¶ 57} As discussed above, the trial court found no genuine issue of material fact as to whether a material defect existed that the Hennesses had failed to disclose or as to whether the

sump pump malfunction in 2005 caused the mold that was discovered in 2009. In light of these findings, there is no basis to conclude that there was a genuine issue of material fact as to any latent defect that the Hennesses knowingly failed to disclose.

**{¶ 58}** The Schroeders' claims for "statutory" negligence and negligent misrepresentation are based on the manner in which the Hennesses completed the disclosure form and, more specifically, their alleged breach of a duty to disclose the sump pump malfunction. However, the disclosures required by the disclosure form are those that are "based on the owner's actual knowledge." In the absence of evidence that there was or had been a material defect related to the sump pump (or water intrusion) of which the Hennesses were aware, it is unclear to us how or what the Hennesses had a duty to disclose. There is no evidence of a continuing latent material defect related to the sump pump. And, to the extent that the presence of mold in the home was a latent material defect, there is no evidence that the Hennesses knew of it. In our view, the "as is" clause is not implicated in this case, because the Schroeders failed to create a genuine issue of material fact that the Hennesses failed to disclose a latent defect that was known to them.

**{¶ 59}** The second assignment of error is overruled.

IV

**{¶ 60}** The third assignment of error states:

THE TRIAL COURT ERRED BY NOT ALLOWING PLAINTIFF[S]-APPELLANTS TO AMEND THEIR COMPLAINT.

**{¶ 61}** The Shroeders contend that the trial court abused its discretion in refusing to allow them to add a claim against Robbins Contracting, when the Hennesses had already asserted such a third-party claim. The Schroeders' motion for leave to amend was filed on May 22, 2012,

two years after their complaint was filed. The Hennesses had amended their complaint to include Robbins Contracting in June 2011. The Hennesses' motion for summary judgment was pending when the Schroeders filed their motion for leave to amend, and the trial was schedule to begin on June 19, 2012.

**{¶ 62}** "The grant or denial of leave to amend a pleading is discretionary and will not be reversed absent an abuse of discretion." *Med. Assur. Co., Inc. v. Dillaplain,* 186 Ohio App.3d 635, 2010-Ohio-841, 929 N.E.2d 1084, ¶ 29 (2d Dist.), quoting *Englewood v. Turner*, 178 Ohio App.3d 179, 2008-Ohio-4637, 897 N.E.2d 213, ¶ 49 (2d Dist.). An abuse of discretion implies an arbitrary, unreasonable, unconscionable attitude on the part of the trial court. *Id.*

**{¶ 63}** In their motion for leave to amend their complaint, the Schroeders explained their delay in moving to amend by stating that "invasive and destructive work opening the walls," including the "extensive removal of drywall and flooring," had been required before their expert was able to ascertain that the "improper laying of the exterior brick" was a primary cause of the mold and moisture in the home. They asserted that Robbins Contracting would not suffer any prejudice by the amendment because he had been a party to the action for many months due to the Hennesses' third-party complaint against him and knew, during that period, "that his workmanship on the house was at issue." They acknowledged, however, that they believed they were "still within time" to bring a separate action against Robbins Contracting. Robbins Contracting opposed the motion, arguing that the circumstances that led to the delayed testing were entirely within the Schroeders' control.

**{¶ 64}** The trial court overruled the Schroeders' motion to amend their complaint. It reasoned:

The motion to amend asserts that plaintiff's expert, William Treasure, "was finally enabled to access the entire house" concerning the mold condition that underlies this litigation. However, plaintiffs and their expert have had uninhibited access to plaintiffs' residence throughout the litigation commenced in May of 2010. The report of Treasure attached to the motion makes reference to an inspection of the home he conducted in January of 2010, three months before the complaint was filed.

* * * Treasure and plaintiffs have known since the complaint was originally filed that the extent of the mold problem could not be appreciated without extensive removal of drywall and floors in different parts of the house. Plaintiffs have known for almost two years that there could be multiple causes for the mold and made a conscious decision to proceed with litigation against the Hennesses.

{¶ 65} The court acknowledged the Schroeders' belief that they were within the statute of limitations and could possibly pursue a separate action against Robbins Contracting, as well as their argument that pursuing a separate action against Robbins Contracting could result in an inconsistent outcome. It concluded, however, that the Schroeders had sat on their rights, which was not favored under the law, and that the Schroeders bore the responsibility for this risk by "taking two years to assert their rights."

{¶ 66} Before the motion for leave to amend was filed, the Hennesses, Buchanan, RE/MAX, and Robbins Contracting had filed a motion in limine to exclude any evidence of expert testimony obtained as a result of "additional destructive testing" conducted or made known to the parties after the discovery deadline.

{¶ 67}    The trial court acted within its discretion in denying the Schroeders' request to amend their complaint in order to pursue a claim against Robbins Contracting.  Although Robbins Contracting was already a party to the case, the Schroeders intended to rely on evidence in support of the claim against Robbins Contracting that had been gathered or disclosed after the discovery deadline.  The court could also have reasonably concluded that such an amendment of the complaint was likely to necessitate a delay in the trial schedule if the motion in limine were not granted.  It did not abuse its discretion in leaving the Schroeders to pursue this claim in separate proceedings.

{¶ 68}    The third assignment of error is overruled.

V

{¶ 69}    The judgment of the trial court will be affirmed.

. . . . . . . . . .

FAIN, P.J. and HALL, J., concur.

Copies mailed to:

Jeremy M. Tomb
Robert M. Harrelson
William M. Harrelson II
Jeffrey A. Stepner
Mary Barley-McBride
Hon. Christopher Gee